Bragg vs. Gaynor and others.

BRAGG, Respondent, vs. GAYNOR and others, Appellants.

*May 4 — June 21, 1893.*

*Service by publication: Sufficiency of affidavit:* Situs *of debts to non-residents: "Property within the state:" Jurisdiction: Creditors' action: Parties: Fraudulent assignment of notes, etc.: Evidence: Suppression of deposition: Appeal.*

1. Under sec. 2640, S. & B. Ann. Stats. (providing that the application for an order for service by publication shall be based upon the complaint and an affidavit, "together showing the facts required to exist"), where the ground of the application is that defendant is a nonresident and has property within the state, such property, if described in the complaint, need not be described in the affidavit.

2. Debts owing by residents of this state to a nonresident, even though evidenced by notes and mortgages, have so far a *situs* at the domicile of the debtors that they may be subjected to the equitable jurisdiction of courts of this state for the purpose of applying them to the payment of a debt of the nonresident to a resident of this state.

3. Such debts are "property within the state," within the meaning of the statute (sec. 2639, S. & B. Ann. Stats.) providing for service by publication.

4. In a creditor's action under sec. 3029, S. & B. Ann. Stats., to subject such debts owing to a nonresident to the payment of a judgment against him, an injunctional order restraining the payment of said debts to the nonresident or to any one for him was an equitable levy bringing the debts under the control of the court.

5. In a creditors' action under sec. 3029, S. & B. Ann. Stats., brought by the assignee of a judgment to enforce its payment, it was proper to join as a defendant one who was a coplaintiff of the assignor of the judgment and who had attempted to discharge the same, in order that such discharge might be canceled if fraudulent and the rights of all parties be determined.

6. In an action to subject to the payment of a judgment certain debts due the judgment debtor and evidenced by notes and mortgages, the evidence (stated in the opinion) is *held* to sustain findings of the trial court to the effect that certain alleged assignments of such notes and mortgages were not real but were a mere device to defeat the action.

7. The suppression of a deposition cannot be held to be error where such deposition is not included in the bill of exceptions so as to be before the supreme court.

APPEAL from the Circuit Court for *Fond du Lac* County.

This is an action in the nature of a creditors' suit under the statute (S. & B. Ann. Stats. sec. 3029), after the return of an execution on a judgment unsatisfied, brought in the circuit court for Fond du Lac county by the plaintiff as assignee of a judgment rendered in favor of Edmund Blewett and *Patrick Gaynor* against James Gaynor in the circuit court for Winnebago county, March 31, 1890, for $8,114.50, damages and costs. A history of previous litigation which resulted in the judgment will be found in 77 Wis. 378, and of a subsequent action between the judgment debtor and Edmund Blewett and *Patrick Gaynor* to limit or reduce such judgment, in this volume, *ante,* p. 155. The assignment of the judgment was executed by Blewett only, who, it is claimed, was the real owner of it. That *Patrick Gaynor* falsely claimed the entire judgment belonged to him, and November 10, 1890, at the request of James Gaynor, and without any consideration therefor, fraudulently

executed a satisfaction of said judgment under seal in his name, and in the name of Blewett as well, but without any authority in that behalf, and both the said *Patrick* and James Gaynor, who had notice of Blewett's rights, claim that said judgment had been fully satisfied and was rightfully discharged.

The complaint alleges, among other things: (1) That on the 9th of January, 1883, James Gaynor loaned to *O. L. Helmer* and C. S. Cook the sum of $7,000, taking security therefor on real estate situated in Fond du Lac county and described in the complaint, in the name of his wife, Mary Gaynor, but which had been transferred in 1886 to the said James Gaynor and was still held and owned by him, and was past due and unpaid, said Cook having been released from all liability thereon. (2) That he owns and holds a claim and debt secured by mortgage on real estate in said county, described in the complaint, for $2,500, against said *O. L. Helmer*, then past due and unpaid; and that, if any transfer had been made of the same, it was made to defraud the plaintiff. (3) That said James Gaynor is the owner and holder of a certain note and mortgage executed by *Benjamin* and *Leonard Chapman* for $4,500 on real estate in said county, made to said Mary Gaynor for his use, and which were assigned to him in 1888, and are dated October 17, 1884, and remain outstanding and unpaid, except as to the sum of $300; and any subsequent transfer by said Gaynor was fraudulent and colorable. In respect to these mortgages the complaint stated the date and volume and page of the registry thereof in the office of the register of deeds of said county. (4) That the defendant John Hughes has in his possession or under his control moneys, credits, and effects belonging to the defendant James Gaynor in excess of $600. (5) That the defendant Marquis Moore has in his hands, or in his name or control, as trustee or otherwise, real estate, or equitable interests therein, or property,

in which the defendant James Gaynor has an interest, legal or equitable. The several parties above named, to wit, *O. L. Helmer*, the *Chapmans*, John Hughes, and Marquis D. Moore, when this action was commenced, all resided in Fond du Lac county, in this state, and were served with process. *Patrick Gaynor* and Edmund Blewett were also made defendants in respect to the controversy concerning their alleged interests in or ownership of the judgment assigned by the latter to the plaintiff.

The action was commenced January 1, 1891, and the defendants *Helmer*, the *Chapmans*, and Hughes were enjoined from making payment. of the said several debts to said Gaynor or to any one for him, etc., and this injunction was served on James Gaynor on the 9th day of January, 1892, in Chicago, Ill., with the summons and complaint, under an order made in that behalf.

The complaint was amended February 21, 1891, by making W. D. Witherwax a party defendant, and alleging that since the commencement of the action the defendant James Gaynor had caused to be recorded in the office of the register of deeds of Fond du Lac county what purports to be assignments of the *Helmer* mortgages and the *Chapman* mortgage; and that said assignments are merely colorable and made and received to aid the said James Gaynor to hinder, delay, and defraud the plaintiff, and ought in equity to be canceled. Plaintiff prayed judgment that James Gaynor be adjudged to apply to the payment of the judgment any money, property, debts, choses in action, or equitable interests belonging to him, or held in trust for him, or in which he is in any way or manner beneficially interested; that the release of the judgment given by *Patrick Gaynor* to him be declared fraudulent and void as against the plaintiff, and be canceled, and the judgment adjudged to be the property of and belong to the plaintiff; that said *Patrick Gaynor* did not then have, and has never since ac-

quired, any interest or right to control such judgment or any part thereof; that the defendant James Gaynor be enjoined from selling, etc., any of his property, debts, things in action, equitable interests, etc., and that the defendants *Helmer*, the *Chapmans*, Hughes, and Moore be enjoined from making any payment on their respective notes and mortgages and debts described in the complaint; that a receiver be appointed to sell or otherwise dispose of all said property, equitable interests, etc., of the said James Gaynor; and for other and further relief.

The defendants James Gaynor and Witherwax, both of whom resided at Chicago, Ill., were served under orders in the usual form with the summons and complaint, based on the verified complaint and affidavits of the plaintiff. The defendants James Gaynor and W. D. Witherwax did not appear.

The defendant *Helmer* admitted that he, with C. S. Cook, borrowed $7,000 and gave as security therefor a mortgage upon the lands stated in the complaint, which ran to Mary Gaynor, wife of James Gaynor, and was recorded as stated; that the money was received from James Gaynor; the assignment of record of said mortgage, dated March 11, 1886, from Mary Gaynor to *Patrick Gaynor*, and an assignment thereof from *Patrick Gaynor* to James Gaynor, dated April 14, 1888; and that Cook had been discharged from all liability for the debt secured thereby, and that said mortgage was unpaid as to the principal thereof. Further, that about July 30, 1889, he borrowed from James Gaynor the sum of $2,500 upon the real estate described in the complaint, and made a mortgage therefor, which was recorded as therein alleged, which is still unpaid. He further set up that each of the mortgages was, prior to the bringing of the action, assigned and transferred, with the debts secured thereby, by James Gaynor to some party unknown to defendant, and alleged that James Gaynor is not, and was

not at the commencement of the action, the owner and holder of said mortgages, or either of them.

Defendant *Benjamin Chapman* admits that on or about the 17th of October, 1884, he, with one *Leonard L. Chapman*, made jointly a mortgage upon certain lands described in the complaint in the county of Fond du Lac for $4,500 to one Mary Gaynor, which was recorded as in the complaint alleged, and that there appears in the records of the office of the register of deeds an assignment thereof to James Gaynor, dated on or about April 2, 1888, and that said mortgage is unpaid as to the principal sum thereof, except $300 paid on or about November 1, 1889; and alleges that said mortgage was made for the benefit of said mortgagee, Mary Gaynor; that it was, before this action, duly assigned by said James Gaynor to some party unknown to defendant; that he, Gaynor, has not now, and did not at the beginning of this suit have, any interest in or claim upon said mortgage or the notes or debt secured thereby.

The answer of *Leonard L. Chapman* is the same, in substance, as that of Benjamin Chapman, except that it alleges an assignment of the mortgage to W. D. Witherwax, made by James Gaynor, dated and acknowledged September 1, 1890, recorded February 10, 1891, and avers that the assignment was made and accepted in good faith, for a valuable consideration, without fraud, and for the purpose of transferring the mortgage only, and not for the purpose of hindering, delaying, and defrauding creditors of James Gaynor.

The defendant *Patrick Gaynor* alleged that in the action in which the judgment was recovered against James Gaynor he was a party plaintiff in interest, and not a nominal party. His answer then proceeds to set up the transactions between himself and James Gaynor as alleged partners in the business of logging in 1882; that he was hostile to the recovery of the judgment against James Gaynor, and ad-

mits that he testified that the alleged causes of action set up in the complaint in that action had been fully discharged and satisfied before it was commenced; and he denied all fraud and collusion between himself and James Gaynor. He admitted the execution of the satisfaction of judgment, and insisted that it was a due and legal satisfaction, and that he had authority to satisfy it for himself and his co-plaintiff therein, Edmund Blewett. He also set up a contract for logging between Edmund Blewett and James Gaynor, and proceeded to give an account of the dealings of James Gaynor and himself and Edmund Blewett; that by reason of the premises there was nothing actually or equitably due from said James Gaynor to Edmund Blewett; and that on the 6th of December, 1890, an action was begun by James Gaynor against this defendant and Blewett in the circuit court for Winnebago county for the purpose of having the rights and equities of the parties in said action adjusted, being the same here stated, and he made a copy of the complaint in said action an exhibit to his answer; that said judgment had not been paid, and, if anything is due thereon, it is the only partnership asset of value existing and owned by this defendant and Edmund Blewett; that Blewett is insolvent, and James Gaynor makes many claims and demands against this defendant and Edmund Blewett, because of his contract with Blewett and transactions under it; that said partnership firm were owing large sums of money, exceeding $10,000; and by way of counterclaim demanded that the prosecution of this action be stayed, and the assignment of the judgment made by the defendant Blewett to the plaintiff be canceled and set aside, and a receiver be appointed of the partnership assets of the firm of Gaynor & Blewett, to adjust the equities and rights of the parties and to pay partnership debts; and that he, *Patrick Gaynor*, might have other and further relief, etc.  A reply was made to the counterclaim.

At the trial the plaintiff moved to suppress the deposition of James Gaynor, upon certain affidavits made a part of the bill of exceptions. This motion was granted, and the defendants excepted. Neither the deposition nor the substance of it is contained in the bill. When the plaintiff offered evidence in support of his complaint, counsel for the appellants, *Helmer* and the two *Chapmans* and *Patrick Gaynor*, objected, for the reason that the record shows that the court had no jurisdiction over the principal debtor, and could not proceed as against these defendants; that the court had no jurisdiction of the subject of the action; and that the complaint shows no facts to constitute a cause of action as against these defendants. The objections were overruled. Evidence was given tending to support the allegations of the plaintiff's complaint, the main features of which are referred to in the opinion.

The finding as to facts and conclusions of law, as well as the judgment, are so lengthy that it is impracticable to make more than a very brief abstract of them, and are substantially in accordance with the statements and prayer of the complaint. It was found that the defendant *Patrick Gaynor* was a nominal party to the original judgment, and had no interest therein nor in the moneys secured thereby. That it was the sole property of Edmund Blewett, who had good right to convey, satisfy, or assign the same. That *Patrick Gaynor* had no authority to satisfy it, in whole or in part, and received no consideration for any such discharge or satisfaction. That no partnership ever existed between the defendant Blewett and *Patrick Gaynor*, and that the judgment was never a partnership asset or partnership property, and *Patrick Gaynor* had no right to an account for any part thereof. That the judgment was assigned to the plaintiff, *Bragg*, as alleged. That the defendant James Gaynor made the loans mentioned in the complaint to *Helmer*, and received the said notes and

mortgages; and the same was found as to the mortgage of the defendants *Chapman*. That said several mortgages were assigned, as hereinbefore stated, and that at the date of the personal service of the summons and complaint on James Gaynor, January 9, 1891, he was the owner of these several notes and mortgages, which were then unpaid; the *Helmer* mortgages, as well as the greater part of the *Chapman* mortgage, being past due, and all of it remaining unpaid except $300. That the assignments thereof, respectively, dated September 1, 1890, and recorded as stated in the complaint, were not executed at that date, and not earlier than the 26th day of January, 1891, and when executed and delivered were colorable merely and made and received for the purpose of hindering and delaying the plaintiff in the collection of the judgment. That at the date of the commencement of the action the defendant Moore held real estate in said county as trustee, for the benefit of himself and three other persons, of whom James Gaynor was one; and that the defendant Hughes had property in his hands at the time of the commencement of this action, which he held as trustee, one quarter thereof belonging to the defendant James Gaynor. That the transfer thereof by James Gaynor, and of his interest in the real estate held by Moore to Witherwax, was colorable, and made and received for the purpose of hindering and delaying the complainant. And as conclusions of law, among other things, that the court had jurisdiction of the defendants James Gaynor and W. D. Witherwax to the extent of binding them and each of them so far as they or either of them had any right or claim in or to the property, debts, real estate, interests, moneys, credits, and effects due from or in the hands of the defendants *Helmer*, the *Chapmans*, John Hughes, and Marquis D. Moore, as above found, and had jurisdiction of the subject of the action; that the debts secured by the said several notes and mortgages, and

the estate, property, and effects, etc., in the hands of the defendants Hughes and Moore, were, and each of them was, at the time of the commencement of this action and the date of the service of the summons and complaint and injunctional order upon said defendants, within and subject to the jurisdiction of the court, and by virtue of the laws of the state, for the purpose of the remedies sought to be enforced by this action, had their *situs* at the residence of the said several debtors, and not otherwise; and that the complainant have judgment against the said several defendants accordingly, and that a receiver be appointed, etc.

The judgment declared the said several transfers from James Gaynor to the defendant Witherwax fraudulent and void; that the whole amount of the judgment was due to the plaintiff, with interest from its date; that *Patrick Gaynor* had no interest in or to it, and that the satisfaction thereof executed by him was void and of no effect; and in its general provisions was in accordance with the finding, providing for the appointment of a receiver of the said debts, credits, and effects, with power to carry out and execute the judgment and apply the same to the payment of the plaintiff's debt. The debtors *Helmer*, the *Chapmans*, Hughes, and Moore were adjudged to pay the receiver the amount of their debts due to James Gaynor, so far as necessary to pay off plaintiff's demand, within ninety days after notice by the receiver. The defendants *Helmer*, the *Chapmans*, and *Patrick Gaynor* appealed.

For the appellants there was a brief by *Colman & Sutherland*, attorneys, and *Geo. E. Sutherland*, of counsel, and oral argument by *Mr. Geo. E. Sutherland*. To the point that the affidavit for publication must disclose property of the defendant within the state *and must describe it*, and that such property must be liable to seizure and sale upon an execution to be issued on a judgment which might be ob-

tained in that action, they cited *Witt v. Meyer*, 69 Wis. 595; *Smith v. Grady*, 68 id. 218; *Winner v. Fitzgerald*, 19 id. 393; *Bates v. N. O., J. & G. N. R. Co.* 4 Abb. Pr. 72, 83; *Non-Magnetic Watch Co. v. Association*, 44 Fed. Rep. 6; *Von Hesse v. Mackaye*, 121 N. Y. 694; *Renier v. Hurlbut*, 81 Wis. 24; *Lydiard v. Chute*, 45 Minn. 277; *Haight v. Husted*, 4 Abb. Pr. 348; *S. C.* 5 id. 170; R. S. sec. 2738; Drake, Attach. sec. 244. An indebtedness on a note and mortgage is not subject to execution. R. S. secs. 2987–2992; *Eaton v. Whiting*, 3 Pick. 484; *Marsh v. Austin*, 1 Allen, 235; *Dundas v. Bowler*, 3 McLean, 397.

*Edward S. Bragg*, respondent in *pro. per.*, argued, among other things, that the court had jurisdiction, and properly charged the mortgage debts, past due at the commencement of the action, from the appellants, with the payment of the respondent's judgment. The maxim, *mobilia personam sequuntur*, is a legal fiction and must give way to positive law. 2 Kent, Comm. (12th ed.), 406–7; Brown, Jurisdiction, 431; *Catlin v. Hall*, 21 Vt. 152; *Hoyt v. Comm'rs*, 23 N. Y. 227 *et seq.; Green v. Van Buskirk*, 7 Wall. 150, 151; *Cochran v. Fitch*, 1 Sandf. Ch. 142. The legislative power of every state extends to all property within its borders, and only so far as the comity of the state allows can such property be affected by the laws of any other state. *Pullman Car Co. v. Pennsylvania*, 141 U. S. 22. " Every state owes protection to its own citizens, and when nonresidents deal with them it is a legitimate and just exercise of authority to hold and appropriate any property owned by such nonresidents to satisfy the claims of its citizens." *Pennoyer v. Neff*, 95 U. S. 723; *Freeman v. Alderson*, 119 id. 187, 188; *Arndt v. Griggs*, 134 id. 316–329; *Fitzgerald & M. Const. Co. v. Fitzgerald*, 137 id. 98. The state in which property is situate may authorize its seizure, and the court in pursuance of state laws may exercise jurisdiction over the property, although the owner is not brought

within the jurisdiction of the court. Freeman, Judgm.
sec. 373; Wharton, Confl. Laws, secs. 310, 717; Story,
Confl. Laws, secs. 390, 400, 591, 592; Brown, Jurisdiction,
132; *Williams v. Ingersoll,* 89 N. Y. 523–4; *Cooper v. Rey-
nolds,* 10 Wall. 316, 317. Whenever personal property is
taken in arrest, attachment, or execution within a state, the
title so acquired is held valid everywhere. Story, Confl.
Laws, secs. 549–550; *Cousens v. Lovejoy,* 81 Me. 467; *Camp-
bell v. Home Ins. Co.* 1 S. C. 158; *Cochran v. Fitch,* 1 Sandf.
Ch. 145; *Bissell v. Briggs,* 9 Mass. 467–8; *Tingley v. Bate-
man,* 10 id. 252–3; *Blake v. Williams,* 6 Pick. 303; *Embree
v. Hanna,* 5 Johns. 102–3; *Morgan v. Neville,* 74 Pa. St. 52;
*Allen v. Wyatt,* 79 Ill. 284; *Hannibal & St. J. R. Co. v.
Crane,* 102 id. 266; *Bethel v. Chipman,* 57 Mich. 379; *Moore
v. Speed,* 55 id. 84. The legislation of Wisconsin is con-
clusive that in this state, for the purpose of the collection
of a debt through its courts, personal property, credits,
and effects in the possession of a resident of this state or
owing from him to a nonresident have a *situs* at the domi-
cile of the possessor or resident debtor. R. S. secs. 2619,
3789, 3806, 2730, 2738, 2752, 3028, 3029, 2639–2641, 2891.
Both the intent and power to confer jurisdiction thereby,
as against nonresidents having property, credits, or effects
in this state, have been declared and sustained in *Jarvis v.
Barrett,* 14 Wis. 642; *Winner v. Hoyt,* 68 id. 278; *La Crosse
Nat. Bank v. Wilson,* 74 id. 391. It is immaterial whether
the proceeding be by attachment or bill in chancery, it is a
proceeding *in rem. Boswell's Lessee v. Otis,* 9 How. 348. A
bill filed and process served creates a lien in equity aptly
termed an equitable levy. *Miller v. Sherry,* 2 Wall. 249;
*Storm v. Waddell,* 2 Sandf. Ch. 514, 515; *Hadden v. Spader,*
20 Johns. 553. Every species of property belonging to a
debtor may be reached and applied in satisfaction of his
debt. *Edmeston v. Lyde,* 1 Paige, 641. Supplemental pro-
ceedings are a mere substitute for a creditors' bill; the es-

sence is the same. *Smith v. Weeks,* 60 Wis. 100. Garnishment is in every essential element nothing but a creditors' bill. *La Crosse Nat. Bank v. Wilson,* 74 Wis. 391; Brown, Jurisdiction, 421, 426. A creditors' bill is an equitable levy. *In re Milburn,* 59 Wis. 24.

PINNEY, J. 1. The contention that the affidavits used to obtain the orders for service of summons and complaint on the defendants James Gaynor and Witherwax, under S. & B. Ann. Stats. secs. 2639, 2640, are void because the respective affidavits used to obtain them do not describe any property of the defendant within the state or in which he had any interest to be affected by the action, cannot be sustained. The case of *Winner v. Fitzgerald,* 19 Wis. 393, arose under sec. 10, ch. 124, R. S. 1858, when the grounds for making the order were required to appear wholly by affidavit. The present statute (S. & B. Ann. Stats. sec. 2640) provides that the application for the order "shall be based upon the complaint, duly verified and filed, and an affidavit, together showing the facts required to exist." In *Cummings v. Tabor,* 61 Wis. 188, the change in the statute was considered, and it was held that "the statute now requires the order to be based in part upon a verified complaint filed, and it does not expressly require that the affidavit which is to accompany the verified complaint shall show that a cause of action exists against the defendant. . . . It does not say, as the old statute did, that such fact must be made to appear by affidavit." It is enough, within the statute and the rule established by this decision, that the applications were made upon a complaint duly verified, and on affidavits, together showing the facts required to exist. *Voelz v. Voelz,* 80 Wis. 507, 508. The rule thus laid down has not been departed from or modified in any subsequent case. The failure to describe the property in question in the affidavits does not render the

orders invalid.    The property in question is sufficiently de-
scribed in the complaint for all purposes of jurisdiction, if
it is of such character and so circumstanced that on a cred-
itors' suit it can be regarded as property in this state which
can be reached in the action and applied to the payment of
the judgment against James Gaynor, and as against said
Witherwax, if his claim to it, as found by the circuit court,
is colorable and fraudulent as against the plaintiff.

2. It has been the law in this state from a very early
period that debts due to a nonresident debtor from citizens
of this state are subject to garnishee process at the suit of
his creditor in the courts of this state, and that such debtor
can be brought into such courts by publication of summons;
and where the debt is claimed by another he need not be
summoned at all, but, in order to conclude him, it would be
necessary to give him timely notice of the proceeding and
to tender him the defense of it.    *Adams v. Filer*, 7 Wis.
306; *Wilson v. Groelle*, 83 Wis. 530.    More recent provisions
have been made for bringing in the adverse claimant as a
party defendant, so that as to the different claimants the
proceedings may assume the character of an action of inter-
pleader, and for service of an order without the state, or
by publication, if either is a nonresident.    The proceedings
are regarded as an action, and the court may adjudge the
recovery of any indebtedness, the conveyance, transfer, or
delivery to the sheriff, or any officer appointed by the judg-
ment, of any real estate or personal property disclosed or
found liable to be applied to the plaintiff's demand, or to
pass title thereto, and may by its order, when proper, direct
the manner of making sale and of disposing of the proceeds
or any money or other thing paid over or delivered to the
clerk or officer (*Baker v. Lancashire Ins. Co.* 52 Wis. 193;
*Prentiss v. Danaher*, 20 Wis. 311); and the garnishee may
be enjoined from disposing of the debtor's property (*Almy
v. Platt*, 16 Wis. 169; *Malley v. Altman*, 14 Wis. 22); "and

any property, money, credits, and effects held by a convey-
ance or title void as to the creditors of the defendant shall
be embraced in the liability of the garnishee;" but no gar-
nishee can be charged " by reason of his having drawn, ac-
cepted, made, indorsed, or guarantied any negotiable bill,
draft, note, or other security" (S. & B. Ann. Stats. secs.
2766–2768).

But for the last-named provision, the indebtedness of
the defendants *Helmer* and the *Chapmans* to the defendant
James Gaynor could have been reached by process of gar-
nishment, and applied to the satisfaction of the judgment
against him, although a nonresident of the state, and al-
though he had made a colorable or fraudulent transfer of
the indebtedness to the defendant Witherwax, also a non-
resident. For all such purposes, these debts would have
been regarded as property in this state and subject to the
jurisdiction of its courts, although both Gaynor and With-
erwax were nonresidents. Such result would not have been
considered in conflict with the general rule that the *situs*
of personal property is for many purposes, such as taxation,
succession, and distribution, regarded as having its locality
at the domicile of the owner. By force of statute law, as
well as public policy declared thereby and in the decisions
of the courts, the *situs* or place where these debts are con-
sidered to be with reference to jurisdiction of our courts
over them for the purpose of subjecting them to the satis-
faction of debts due to a resident of this state from a non-
resident in order to protect, do justice to, and satisfy cred-
itors resident here, is that of such resident debtor owing
the same. The right to so reach and appropriate such debts
for such purposes has been affirmed by numerous adjudica-
tions from the earliest period, and it is too late now to at-
tempt to maintain the proposition that for all purposes the
*situs* of debts so sought to be reached and applied is at the
domicile of such nonresident. They are to be regarded,

for the purposes of such proceedings, as property abiding
or being in the domicile of the party owing them, and are
as much subject to the jurisdiction and control of our courts
as tangible property of a nonresident found within our ju-
risdiction. It cannot be disputed that tangible property
so situated could be seized and applied to the satisfaction
of the debts of a nonresident; and it is equally clear, as it
seems to us, that debts, things in action as distinguished
from things in possession, may be subjected to the equi-
table jurisdiction of our courts for the same purpose. The
process of garnishment operates as an attachment, and
fastens on such debts a lien by which they are brought
under the dominion and jurisdiction of the court. *Embree
v. Hanna,* 5 Johns. 102, 103; *Milne v. Moreton,* 6 Bin. 353;
*Bissell v. Briggs,* 9 Mass. 467, 468. In *Tingley v. Bateman,*
10 Mass. 346, it is said: " The summoning of a trustee is
like a process *in rem.* A chose in action is thereby arrested
and made to answer the debt of the principal. The person
entitled by the contract or duty of the supposed trustee is
thus summoned by the arrest of this species of effects.
They are to be considered for this purpose as local, and as
remaining at the residence of the debtor or person intrusted
for the principal." And in *Blake v. Williams,* 6 Pick. 303,
it is said that " the relation of debtor and creditor, and the
rights of the latter over the effects of the former, are dis-
tinct objects of jurisprudence, within the control of the
legislative power of the country where the property is.
This power is absolute and uncontrollable. It may be un-
reasonably exercised, but still it is legal if so willed by a
sovereign independent power, for the dominion is here."
Story, Confl. Laws, §§ 390, 592, 592*a; Milne v. Moreton,* 6
Bin. 361.

The courts of this state can exercise jurisdiction only
over persons and property within its territory, but it is
familiar law that " through its tribunals it may subject

property within its limits, owned by nonresidents, to the payment of demands of its own citizens against them; and the exercise of this jurisdiction in no respect infringes upon the sovereignty of the state where such owners are domiciled. Every state, it is held, owes protection to its own citizens, and when nonresidents deal with them it is a just and legitimate exercise of authority to hold and appropriate any property owned by such nonresidents to satisfy the claims of its citizens." *Pennoyer v. Neff*, 95 U. S. 726. " This jurisdiction is called into exercise and attaches where property is once brought under the control of the court by seizure or acts of equivalent import, and which stand for and represent the dominion of the court over the thing, and, in effect, subject it to the control of the court. This may be by the levy of a writ or by the mere bringing of a suit. ' It is immaterial,' said the court, by Mr. Justice McLEAN, in *Boswell's Lessee v. Otis*, 9 How. 336, ' whether the proceeding against the property be by an attachment or bill in chancery.'" The property may be bound without actual service, within the jurisdiction, of process upon the owner, where the only object of the proceeding is to enforce a claim against the property specifically of a nature to bind the title. Notice of the proceeding may be given by publication, etc., as prescribed in the statute (*Cooper v. Reynolds*, 10 Wall. 308, 317; *Heidritter v. Elizabeth O. C. Co.* 112 U. S. 300–302); and the property will be effectually bound by the judgment that may follow. That local laws may thus fix the *situs* of debts at the domicile of the debtor for such purposes that under such laws they may be attached, and compulsory payment will protect the debtor everywhere against a suit for the recovery of the same debt by the creditor, is well established by many adjudicated cases, among which are *Allen v. Watt*, 79 Ill. 284; *Bethel v. Chipman*, 57 Mich. 379; *Newland v. Reilly*, 85 Mich. 151; *Hannibal & St. J. R. Co. v. Crane*, 102 Ill. 249;

*Morgan v. Neville*, 74 Pa. St. 52; *Cochran v. Fitch*, 1 Sandf. Ch. 142; *Williams v. Ingersoll*, 89 N. Y. 523, 524. And the correctness of this doctrine is distinctly recognized in *Guillander v. Howell*, 35 N. Y. 658, 659, as an exception to the general rule as to the *situs* of personalty at the domicile of the owner. Garnishee process under our statute is only the equivalent of an equitable attachment, and creates a lien in like manner as by filing a bill, and is in every essential element, so far as it extends, a creditors' bill (*La Crosse Nat. Bank v. Wilson*, 74 Wis. 391); and a creditors' bill is an equitable levy (*In re Milburn*, 59 Wis. 34).

Had James Gaynor died domiciled in Illinois, the plaintiff, as his creditor, could have taken out administration in Wisconsin, by reason of Gaynor's ownership of the debts and demands due from the defendants in this action, and enforced collection of his debt by that means, beyond the power of Gaynor's personal representatives to prevent such result, for locality of personalty of a deceased confers local probate jurisdiction, without consideration as to his last domicile, and debts due the deceased are deemed *bona notabilia*, i. e., personalty suitable for conferring local probate jurisdiction; and the rule is that simple contract debts constitute such where the debtor (not creditor) resides, and where they can be sued upon. So of any chose in action or money right. Schouler, Ex'rs, § 24; *Attorney General v. Bouwens*, 4 Mees. & W. 191; *Owen v. Miller*, 10 Ohio St. 136; *Pinney v. McGregory*, 102 Mass. 186; *Clark v. Blackington*, 110 Mass. 373. In *Attorney General v. Bouwens*, *supra*, it was held that, "as bills of exchange and promissory notes do not alter the nature of simple contract debts, but are merely evidences of title, the debts due on these instruments are assets where the debtors lived, and not where the instrument was found." In *Wilkins v. Ellett*, 9 Wall. 740, 742, the court, recognizing the general rule as to the *situs* of personal property, recognizes also a limita-

tion or qualification in respect to personal property by the comity of nations, founded on the policy of the foreign country to protect the interests of its home creditors; and the same distinction or exception, as well as the ground for it, is again assigned in the same case. 108 U. S. 258. Under these principles the *situs* of such debts is made by such local policy the domicile of the debtors, and not of the nonresident to whom they may owe them.

This action is founded upon the statute (sec. 3029, S. & B. Ann. Stats.) restoring actions in the nature of creditors' suits, and providing that, " whenever any execution against the property of any judgment debtor shall have been issued upon a judgment for the payment of money, and shall have been returned unsatisfied in whole or in part, the judgment creditor may commence an action against such judgment debtor and any other person to compel the discovery of any property or thing in action belonging to such judgment debtor, and of any property, money, or thing in action due or held in trust for him, and to prevent the transfer of any such property, money, or thing in action, or the payment or delivery thereof to such judgment debtor, except," etc.; and the court has power by statute to appoint a receiver for such property, money, and things in action. Fraudulent grantees may be joined as defendants, although they hold by separate conveyances and are not connected in interest with each other. *Hamlin v. Wright*, 23 Wis. 491. This action plainly extends to debts evidenced by bills and notes, and is more comprehensive and far-reaching than a proceeding by garnishment. When commenced by service of process or notice, it operates as an equitable levy, and creates a lien in equity upon the effects of the judgment debtor, and every species of property belonging to him may be reached and applied to the satisfaction of his debts. Wait, Fraud. Conv. §§ 24, 33; *Hadden v. Spader*, 20 Johns. 554; *Storm v. Waddell*, 2 Sandf. Ch.

514, 515; *In re Milburn*, 59 Wis. 34; *Miller v. Sherry*, 2 Wall. 249; *Tilford v. Burnham*, 7 Dana (Ky.), 110, 111; *Edmeston v. Lyde*, 1 Paige, 637; *Beck v. Burdett*, 1 Paige, 309.

By the injunction granted in this case against the defendants resident in Wisconsin the court in the most effective manner possible asserted its dominion and control over the indebtedness sought to be reached, and there can be no doubt, we think, that these debts were thus brought, by reason of this equitable levy, within the control and dominion of the court for the purposes of this action, which was made effective by its final judgment appointing a receiver to collect them and apply the proceeds to the plaintiff's judgment, with interest and costs. We are not aware of any well-considered case in conflict with this view. The debt or duty evidenced by notes, bonds, or bills is incorporeal and intangible, and exists in idea or contemplation of law. The note, bond, or bill is the visible, tangible symbol of the debt or duty, which may be transferred by assignment or indorsement thereof. Practically the note, bill, or bond represents money due and to come from the maker or party liable in one state to a party in another, who holds merely the evidence of the existence of the debt for it; and it seems but reasonable and proper to hold that the *situs* of the debt for the purposes here in question is at the domicile of the debtor, where collection of it may be enforced and the property pledged as security may be subjected and applied to its payment. In no other jurisdiction could the security be made available; and it seems clear that the subject matter to which the title or claims in question relate is the property, and not the notes, etc., which are merely evidence of its existence. *Owen v. Miller*, 10 Ohio St. 143. Loss of the notes and mortgages, or destruction of them, does not effect or imply a loss or extinction of the debts which they evidence. They are none the loss prop-

erty because their amount and maturity are set forth in the notes and mortgages. *Kirtland v. Hotchkiss*, 100 U. S. 498.

A well-founded distinction would seem to exist between the right of the creditor to collect the debt which may have no locality independent of his own domicile, and the right as to creditors in this state seeking to reach and apply such debts to the payment of their debts against the payee thereof, in which case the *situs* of the debts for that purpose must be regarded as in Wisconsin, where the right can be made effective as against the persons owing such debts. The case of *Owen v. Miller*, 10 Ohio St. 136, 143, is directly in point, and fully sustains the plaintiff's contention, as well as other authorities already referred to. The question upon which this action depends was not involved in the cases of *Bryan v. University Pub. Co.* 112 N. Y. 382, and *Von Hesse v. Mackaye*, 55 Hun, 365. Those cases more nearly resemble the proceeding under consideration in the case of *Renier v. Hurlbut*, 81 Wis. 24.

3. In *Winner v. Fitzgerald*, 19 Wis. 393, it was held that the officer signing the order of publication, where jurisdiction was based upon property within this state, must be able to see from the affidavit that it was such as is liable to be seized on attachment or execution; but this was said and must be considered in respect to a legal action in form *in personam*, such as that was, and designed to reach by execution on the judgment therein property which could be seized and sold under such process. *Jarvis v. Barrett*, 14 Wis. 591. It was not the intention of the court to so narrow the statute as to exclude from its operation and effect property within this state not the subject of such seizure and sale, and thus defeat in a considerable measure the equity jurisdiction plainly intended to be extended as to all property within the state, tangible or intangible, over which the judicial power of the state may be lawfully ex-

ercised by an action of an equitable nature, either *in rem* or one in substance *quasi in rem*. The language of the statute is general. No such limitation is suggested by it, and we think the statute thus providing for service by publication extends to and includes all equitable interests and all such property as may be reached by an action such as this, as debts having a *situs* here and capable of being subjected to the jurisdiction and control of our courts. The statute should be liberally and beneficially construed in favor of citizens of this state or those suing in its courts. We hold, therefore, that the property described in the complaint was not only property in this state, but sufficient to found the jurisdiction of the court, and that the objections to the jurisdiction of the court are not well taken.

4. The plaintiff having sued as trustee for others interested in the judgment, as well as in his own right, has also joined as a defendant *Patrick Gaynor*, the coplaintiff of the plaintiff's assignor in its recovery, and who afterwards, claiming to be the owner of the entire judgment, collusively and without any consideration executed to his brother, James Gaynor, a satisfaction and discharge of the entire judgment, which is relied on to defeat this action. One purpose of this action is to have this discharge canceled and the respective rights and interests of the claimants in the judgment determined. It was competent for the plaintiff, as such assignee, to bring his action, and to make such joinder of defendants, so that the discharge or release might be canceled if fraudulent and that the rights of the parties might be ascertained and adjusted with a view to the proper application of the proceeds of the judgment when collected. The object of the action is not to overhaul, modify, or alter the judgment originally given, but to enforce it, and to settle the rights of *Patrick Gaynor* and the plaintiff, as the assignee of the judgment, as between themselves, and remove an obstacle wrongfully interposed

to its collection by the collusive conduct of *Patrick* and James Gaynor. The case of *Stein v. Benedict*, 83 Wis. 603, and cases cited, does not tend to show that the complaint as thus framed ought not to be maintained. The court, upon the evidence produced, properly found that the plaintiff was the sole owner of the judgment; that *Patrick Gaynor* had no beneficial interest in it; that the discharge by him was without authority and fraudulent and void. *Patrick Gaynor's* counterclaim failed because it appeared that he and Blewett, the plaintiff's assignor, had not been copartners.

5. We have examined the evidence, and are satisfied that it sustains the findings of the circuit court. It would serve no useful purpose to protract this opinion with a discussion of the evidence. After a bitter and protracted litigation, a large judgment was recovered against the defendant James Gaynor. About that time, or soon after, he took up his residence in Chicago. He had made loans and investments in the county of Fond du Lac, and the debts in question were due him from parties residing there, in all to a large amount, very much in excess of what would be required to satisfy this judgment. He had a strong motive for attempting in the future, as he had in the past, to avoid payment of it, and had resorted to a device for that purpose which we have been compelled to hold fraudulent. We are satisfied from the evidence that the three mortgages affected by the judgment in this action, and the debts due to James Gaynor from Moore and from Hughes, two of the defendants, were not in fact assigned until after this action had been commenced and the injunction served upon the mortgagors *Helmer* and the *Chapmans;* that the transfers afterwards made were not real, but a mere device to defeat this action and defraud the plaintiff of his debt. The notes and mortgages had been a considerable time past due. It appears that no inquiry was made by Witherwax, the pre-

tended assignee, of the parties who had made these notes and mortgages, or at least of two of them, either as to the validity of the claims or the value of the property on which they appeared to be secured. These assignments bear the same date, September 1, 1890. Three of them came to the office of the register of deeds of the proper county about February 10, 1891,— surely a long delay in making registry thereof, if *bona fide;* and they were in a condition showing that they had been freshly written and but a few days before. Proof on this subject was given by witnesses who saw them when received, and who had experience in matters of handwriting and examination of manuscripts. These transfers were without recourse, and appear not to have been made or conducted according to the usual course of business,— that is to say, with examinations in the manner and with the prudence and caution that would naturally attend *bona fide* transactions. The several insurance policies on the mortgaged property for the benefit of the mortgagee do not appear to have been assigned until January 26. Three days after the assignments were sent for registry, a request came to have them "recorded and returned soon," in which James Gaynor joined, saying it would accommodate the party who sent them,— ostensibly the attorney of Witherwax. The subsequent statements and conduct of Witherwax in regard to these claims do not seem like those of a *bona fide* purchaser, but rather to have been in the interest of James Gaynor; and the latter, in one instance at least, by letter, was quite importunate that the party owing one of the mortgages should pay Witherwax; and there are also other facts and circumstances in evidence which tend to show that the alleged transfers were not *bona fide* and real. The defendants James Gaynor and Witherwax made default and offered no explanation of the evidence produced against them. We think the evidence sustains the findings of the circuit court that

Witherwax at the time the action was commenced had not, nor had he afterwards, any real interest in the debts and demands in question, but that James Gaynor was the real owner of them.

6. The suppression of the deposition of James Gaynor is assigned as error, but the deposition is not before us, as it was not included in the bill of exceptions. We cannot say that the appellants have been injured by the ruling of the court. Error must be established affirmatively and will not be presumed. The cases in this court to this effect are very numerous. We cannot presume that this deposition contained anything that would have justified a result different from that at which the circuit court arrived.

It follows from these views that the judgment of the circuit court must be affirmed.

*By the Court.*— The judgment of the circuit court is affirmed.

See note to this case in 21 L. R. A. 161.— REP.