*In re* WILEY.

CONTEMPT—INVALID ORDER—DIVORCE—ALIMONY.

> Where, in divorce proceedings, an order of the chancery court directed to a bank to pay money belonging to the husband to the wife's attorney was invalid because the bank was not a party thereto, the cashier of the bank was not in contempt in disregarding said order.

Certiorari to Wayne; Webster, J. Submitted February 6, 1919. (Docket No. 73.) Decided April 3, 1919.

George Wiley was adjudged guilty of contempt of court. Reversed.

*Archer F. Ritchie* (*William V. Moore*, of counsel), for appellant.

*Frank C. Sibley* (*James M. Cleary*, of counsel), for appellee.

OSTRANDER, J.   Rose McFarland, in her petition, filed some time in May, 1918, sought to obtain an order by which a part of the property and estate of her husband, Russell M. McFarland, or a part of his earnings and income, should be allotted, assigned, set apart and paid to her "as alimony and for her support and maintenance," relying upon the provisions of—

"An act to provide wives with property and maintenance from their husband's estates when neglected or deserted by them, or when the husband has become an habitual drunkard or has practiced extreme cruelty towards his wife or committed any offense sufficient to entitle the wife to a decree of divorce or separation." 3 Comp. Laws 1915, § 11479 *et seq.*

She set out in the petition that her husband is capable of earning and that he earns from $200 to $500 monthly, that he owns certain real estate in the State of Indiana, and that he has, as she is advised, "cash in the Wayne County & Home Savings Bank, Detroit, Michigan." She makes her husband sole defendant in her petition, praying for an injunction restraining him from disposing of any of his property, and that the said bank "be likewise enjoined until the further order of this court." An injunction issued, by the terms of which—

"it is further ordered that the Wayne County & Home Savings Bank, a Michigan corporation, is enjoined from delivering or disposing of any moneys or property belonging or owing to said Russell M. McFarland until the further order of this court."

This was served upon the bank on or about May 18,

1918, the officer upon whom service was made being George Wiley, vice-president of the bank. In July, 1918, the court made an order requiring the husband to pay petitioner, or her attorney, $50, as an attorney's fee, and to the clerk of the court $15 weekly, in advance, as temporary alimony, beginning June 22, 1918. This order contained the further provision that the money in the said bank "be held for expenses of plaintiff in case of her undergoing an operation, or medical treatment."

Upon her further petition, which set out that the defendant husband had not paid the alimony and had refused to do so, or the solicitor's fee, praying that the alimony theretofore directed to be paid be taken from the fund in the said bank, and that an order be made for the payment of $50 attorney's fee and back alimony of $60, directed to said bank, an order was made, directed to the said bank, commanding it to pay petitioner's attorney the sum of $110

"of the money now held by you belonging to Russell M. McFarland, and subject to the order of this court."

A copy of this order was presented to Mr. Wiley with a request for the payment of the money, and the request was refused. This being brought to the attention of the court by the affidavit of petitioner's attorney, the court on July 30, 1918, made an order requiring Mr. Wiley to show cause why he should not be punished for his alleged misconduct in the premises. In his answer Mr. Wiley says that he is advised by the attorneys for the bank that the order to the bank for the payment of the money is void, because entered in a proceeding to which the bank is not a party, the bank having no opportunity to be heard before the order was granted. The answer further sets out that when the injunction was served Russell M. McFarland had on deposit in the bank in an ordi-

nary commercial account $185.15 and as a consequence the bank was then indebted to him in that amount. It is denied that any disrespect to the court was or is intended, asserted that the bank is acting in good faith and that the order affords the bank no protection. Accompanying the answer is the affidavit of the attorney for the bank, who says he has consulted the general counsel for the bank and is of opinion that the order of the court is void, affording the bank no protection in the payment of the money, and that he advised the bank not to comply with the order. Mr. Wiley was found guilty of contempt, fined $50, ordered to pay plaintiff in the original suit $110, "as compensation for the injury done to her, by reason of said misconduct and contempt," to pay the expenses of the contempt proceeding to plaintiff, taxed at $50, and to stand committed to the common jail of the county until such sums are paid or until the further order of the court.

In the return to the writ of certiorari, which appears to have been issued, not to the court, or the clerk thereof, but to Judge Webster, it is said, among other things, that the order to the bank for the payment of the money was "OK'd by Asher L. Cornelius, attorney for the defendant, who had previously stipulated with the attorney for the plaintiff that this money should be so used."

It is further returned that the opinion of Judge Webster, and the findings he made, are made a part of the return. A part of the matter thus referred to is the following:

"I wish to add further that under section 5391, judicature act, which is as follows: 'Parties to suits, attorneys, counselors, and all other persons, for the nonpayment of any sum of money ordered by such court to be paid, in cases where by law execution cannot be awarded for the collection of such sum; the disobedience of or refusal to comply with any order

of such court for the payment of alimony, either permanent or temporary, or costs made in any suit for divorce or separate maintenance, and any other disobedience to any lawful order, decree of process of such court.' It is under that section that I fine Mr. Wiley $50."

The reference is undoubtedly to chap. 5, § 1, subd. 5 (3 Comp. Laws 1915, § 12268).

It is not claimed that the bank or Mr. Wiley has, directly or indirectly, violated or disobeyed, or aided McFarland in disobeying, the injunction.

Whether Mr. Wiley was in contempt is to be decided upon the facts existing when payment of the order of the court was refused. The court has made or directed no inquiry to ascertain whether the defendant McFarland is a depositor in or creditor of the bank, and, if he is, to what extent the bank owes him money. With no information upon the subject, so far as is disclosed by the record, except that afforded by the petition of the wife, the court made an order, addressed to the bank, directing it to pay out $110 on McFarland's account. It is true that by the admission of the bank it appeared, before sentence was pronounced, that the bank was debtor to McFarland in a sum greater than the order called for, but this disclosure came after an officer of the bank had been required to show cause why he should not be punished for contempt for disobeying the order. The question presented would be no different if the order had required the payment of $1,000 or of $5,000, or if, in fact, the bank was a creditor and not a debtor to McFarland. The first opportunity, of right, to show what the facts are was afforded after an officer of the bank was brought into court to answer for an alleged contempt. It is, of course, wholly unimportant that the attorney for McFarland "OK'd" the order. A valid order of a court of chancery does not require the O. K. of coun-

sel, and an invalid order does not, as a rule, become valid upon being "OK'd" by counsel for one of the parties to the suit. Nor could the bank, if it knew of the O. K., rely upon the approval of counsel for the depositor in disbursing his money.

The jurisdiction possessed by a State over property, tangible or intangible, within its border, regardless of the residence or presence of the owner, is not questioned. Constantly, the courts of the various States seize and apply to the satisfaction of their obligations property belonging to nonresidents as well as residents. Deposits in banks within the State are property within its jurisdiction, and within the jurisdiction of its courts, subject to be sequestered, seized, and finally applied in satisfaction of the debt of the defendant debtor. Instructive cases, generally, upon this subject, are *Pennington* v. *National Bank*, 243 U. S. 269 (37 Sup. Ct. 282, L. R. A. 1917F, 1159); *Wood* v. *Price*, 79 N. J. Eq. 1 (81 Atl. 1093); *Twing* v. *O'Meara*, 59 Iowa, 326 (13 N. W. 321); *Murray* v. *Murray*, 115 Cal. 266 (47 Pac. 37, 37 L. R. A. 626, 56 Am. St. Rep. 97); *Bragg* v. *Gaynor*, 85 Wis. 468 (55 N. W. 919, 21 L. R. A. 161). This jurisdiction of the State over property within its borders, exercised in the interest of creditors of the owners of the property, is evidenced in this State by statutes providing for garnishment, attachment, receivers, and, in cases like the one at bar, by the provisions, somewhat crude and imperfect, of the act under which Mrs. McFarland's petition was filed. Among other things it is provided in section 2 of the act (§ 11480) —

"That if upon the filing of such petition it shall be made to appear to the circuit judge that the husband has property, real or personal, credits, stocks or securities, which there is good reason to believe he will dispose of to avoid the decree of the court, the court may grant an injunction restraining the sale and incumbrance of such property, stocks and securities and

the collection of such credits, and notice of such injunction served upon any person who is the agent of the husband or his debtor or the secretary of any corporation in which he holds stock, or upon the register of deeds, shall enjoin them from taking any part in aiding the transfer or incumbrance of such property and from the payment of such debts, and be notice to any and all persons to whose knowledge it shall be brought, and operate as an attachment on property in the hands of that person." * * *

But the sequestration, all and generally, or singularly and specifically, of the property of a husband by the use of the injunction, pending the entry of a decree making provision for the wife or dismissing the proceeding, does not determine the rights of those in whose possession such property may be, or the rights of alleged debtors of the husband, although it has been before now considered by the trial court that it did.

In *Ehlers* v. *Stoeckle*, 37 Mich. 261, it was determined that an order disposing of one's property rights in a proceeding to which he is not a party, and in which he has had no chance to be heard, unless as a witness, is void. In that case, in a proceeding at law in the nature of a creditor's bill, it was sought to reach certain property supposed to belong to the judgment debtor and to have been placed in the hands of others to put it beyond reach of creditors. The persons alleged to be holding the property of the debtor were sworn as witnesses. The court found they were holding the debtor's property, and ordered it turned over to the sheriff to be sold on execution. This court said:

"What is particularly noticeable in this order is, that it undertakes to dispose finally of the rights of Tiederman and George Stoeckle in a proceeding to which they were not parties, and where they had no opportunity to be heard except as witnesses, and in that capacity, of course, only as they were questioned. They have appealed from the order, but it was not necessary, because as to them it was void. Every

man is entitled to his day in court before his rights can be finally disposed of, and even the legislature could not deprive him of the right. But in this case the legislature has not attempted it. On the contrary the statute contemplates the appointment of a receiver for such cases, and suits by him directly against the parties supposed to be covering property for the judgment debtor."

In the case at bar, the court assumed, in the order it made for the payment of money, to dispose finally of the rights of the bank without opportunity for the bank, not a party to the proceeding, to be heard. The legislature itself cannot do this, and in the act in question has not attempted to do such a thing. We are not now called upon to determine to what extent the statute provision for enforcing any decree the court may make may be aided, or supplemented, by other actions in which the decree is treated as evidence of an unpaid debt of the owner of the property. It is enough to say that the rights of the debtors of the husband against whom a decree has been made, who are not parties defendant upon the record, are not determined by the decree and must be determined before they can be treated as in default.

We are obliged to hold that the order upon the bank for the payment of money was void and, *ex nihilo nihil*, it follows that the judgment in the contempt proceeding must be set aside. This conclusion makes it unnecessary to consider, critically, the form of the order made in the contempt proceeding, which appears designed to leave intact the fund in the bank, requiring Mr. Wiley to pay a sum equal to it, as damages occasioned by his misconduct. Owing to the nature of the proceeding, costs are not awarded.

BIRD, C. J., and MOORE, STEERE, BROOKE, FELLOWS, and STONE, JJ., concurred. KUHN, J., did not sit.