# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2011AP2597 |
| COMPLETE TITLE: | Associated Bank N.A., |
| | Plaintiff, |
| | SB1 Waukesha County, LLC, |
| | Co-Plaintiff-Respondent, |
| | v. |
| | Jack W. Collier, Deborah L. Collier, Greenbrier |
| | Developers, LLC, Executive Realty Partnership |
| | LP, Gerald |
| | Franklin, Kenneth Whaley, ISB Community Bank and |
| | United |
| | States of America, |
| | Defendants, |
| | Decade Properties, Inc., |
| | Intervening |
| | Defendant-Appellant-Petitioner. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at 345 Wis. 2d 397, 824 N.W.2d 928
(Ct. App. 2012 – Unpublished)

| | |
|---|---|
| OPINION FILED: | July 15, 2014 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | September 11, 2013 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Waukesha |
| JUDGE: | Donald J. Hassin Jr. |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | ABRAHAMSON, C.J., BRADLEY, J., dissent. (Opinion filed.) |
| NOT PARTICIPATING: | PROSSER, J., did not participate. |

ATTORNEYS:

For the intervening defendant-appellant-petitioner, there were briefs by *Roy L. Prange*, *Valerie L. Bailey-Rihn*, and *Quarles & Brady LLP*, Madison, and oral argument by *Valerie L. Baily Rihn*.

For the co-plaintiff-respondent, there was a brief by *John M. Van Lieshout*, *Joseph W. Voiland*, and *Reinhart Boerner Van Deuren S.C.*, Milwaukee; and *Neal H. Levin* and *Freeborn & Peters LLP*, Chicago, and oral argument by *Neal H. Levin*.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2011AP2597
(L.C. No. 2009CV4938)

STATE OF WISCONSIN      :      IN SUPREME COURT

Associated Bank N.A.,

    Plaintiff,

SB1 Waukesha County, LLC,

    Co-Plaintiff-Respondent,

    v.

Jack W. Collier, Deborah L. Collier, Greenbrier Developers, LLC, Executive Realty Partnership LP, Gerald Franklin, Kenneth Whaley, ISB Community Bank and United States of America,

    Defendants,

Decade Properties, Inc.,

    Intervening Defendant-Appellant-Petitioner.

**FILED**

**JUL 15, 2014**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Modified in part and as modified, affirmed.*

¶1 PATIENCE DRAKE ROGGENSACK, J. This is a review of an unpublished decision of the court of appeals[1] affirming the

---

[1] Associated Bank N.A. v. Collier, No. 2011AP2597, unpublished slip op. (Wis. Ct. App. Nov. 28, 2012).

circuit court's[2] denial of summary judgment, grant of a motion to turn over property to the receiver, and denial of a motion for reconsideration. The review concerns the collection efforts of two judgment creditors of defendant Jack Collier, SB1 Waukesha County, LLC and Decade Properties, Inc., the latter being owned by Collier's business associate, Jeffrey Keierleber.

¶2 Decade argues that when it served Collier with an order to appear at supplemental proceedings, it perfected a "common law creditor's lien" on all of Collier's personal property. According to Decade, its lien preserves the property for Decade's benefit, thereby precluding SB1 from pursuing collection from it. SB1 argues that even though Decade served Collier with an order to appear at supplemental proceedings before SB1 did so, Decade has no lien on Collier's personal property because Decade's judgment was not docketed before its service of the order to appear. SB1 reasons that a judgment must be capable of execution before there is the potential for a common law lien on personal property and undocketed judgments cannot obtain an execution.

¶3 We conclude that supplemental proceedings under ch. 816 are a discovery tool in aid of judgment collection. Decade's serving Collier with an order to appear for supplemental proceedings did not give rise to a blanket lien on all of Collier's personal property that prevented SB1 from

---

[2] The Honorable Donald J. Hassin, Jr. of Waukesha County presided.

pursuing collection. A judgment creditor obtains an interest in a judgment debtor's identified, non-exempt personal property superior to other unsecured creditors when it dockets its money judgment, identifies specific personal property and levies that property. Levying may be accomplished by at least three different means: (1) by executing against specific personal property with the assistance of a sheriff; (2) by serving the garnishee defendant in a garnishment action to seize specific property in the hands of the garnishee defendant; or (3) by obtaining an order to apply specific personal property to the satisfaction of the judgment, which a creditor may do with the assistance of a supplemental receiver. Wis. Stat. § 815.05(6) (2011-12);[3] Wis. Stat. § 812.01; Wis. Stat. § 816.08.

¶4 Here, SB1 was the first judgment creditor with a docketed money judgment to levy specific, non-exempt personal property of Collier. It did so by obtaining a court order to turn over specifically identified property to its receiver. Accordingly, we affirm the decision of the court of appeals that concluded that SB1 has priority over Decade in regard to the specific personal property SB1 identified and levied. However, insofar as the decision of the court of appeals can be read to recognize a blanket lien in favor of SB1 that prevents other creditors from pursuing collection from Collier's personal

_____

[3] All subsequent references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated.

3

property, we modify that decision because no blanket lien exists.

## I. BACKGROUND

¶5 This case concerns SB1's attempt to satisfy the portion of a default judgment against Collier that it purchased from Associated Bank, N.A. The relevant portion of the judgment[4] relates to Collier's default on a $7.2 million promissory note in favor of Associated, which Collier secured with a personal guarantee and a mortgage on a Brookfield property.

¶6 After purchasing a portion of Associated's docketed money judgment against Collier, SB1 obtained an order for Collier to appear at supplemental proceedings. Despite repeated attempts to serve Collier in Wisconsin and Florida, where Collier had a second home, SB1 was unsuccessful and the order expired.

¶7 Shortly after SB1 obtained an order for Collier to appear, Keierleber, the owner of Decade, sued Collier. The court of appeals succinctly summarized the litigation as follows:

> In short order, Keierleber commenced six lawsuits on behalf of Keierleber, Keierleber-owned, and Keierleber- and Collier-owned Wisconsin and Florida entities, Decade among them. Each complaint sought enforcement of a claimed loan right and money judgment against Collier or against two business entities of which Keierleber and Collier each owned a fifty-

---

[4] The judgment also related to Collier's default on a $1.8 million promissory note, which he secured with his interest in Clearwater Bay Investors, LLC. This debt is not part of the proceedings before us.

percent interest. While still unserved with SB1's order to appear, Collier accepted service of these six complaints. The parties involved in the six new actions executed stipulations agreeing to judgment amounts in each of them.

Associated Bank N.A. v. Collier, No. 2011AP2597, unpublished slip op., at ¶4 (Wis. Ct. App. Nov. 28, 2012).

¶8    Of these six lawsuits, the present case concerns only the $654,646.83 judgment Decade obtained against Collier personally.   Decade tried to docket this judgment with the Waukesha County Clerk of Court by sending the judgment, a $5.00 docketing fee and a receipt for docketing to the circuit court, where the judgment was to be signed and forwarded to the clerk with the docketing fee and receipt.   However, even though Decade's attorneys received the receipt dated October 26, 2010, the clerk did not enter the judgment in the judgment and lien docket.   Instead, on June 29, 2011, after the error was discovered, the clerk docketed Decade's judgment.

¶9    On November 16, 2010, Decade served Collier with an order to appear for supplemental proceedings, which Decade's attorney conducted on November 22, 2010.   In its brief, Decade explained that it took these actions after learning about SB1's collection efforts in order to "protect its interest by first obtaining a judgment and then a superior Creditor's/Receivers Lien against Collier's personal property."   It does not appear from the record that Decade took any additional steps to seize any of Collier's personal property to satisfy its judgment.

¶10 Having been unsuccessful in serving Collier before the initial order expired, SB1 subsequently obtained a second order

for Collier to appear for supplemental proceedings.  SB1 also moved the circuit court to appoint a supplemental receiver.

¶11  On April 2, 2011, at Collier's Florida residence, SB1 finally obtained service of the order to appear for supplemental proceedings and its motion to appoint a receiver.  On April 18, 2011, Collier failed to appear at the scheduled supplemental proceedings and the supplemental commissioner issued an order to show cause why Collier should not be held in contempt of court.  The commissioner also appointed Douglas Mann as supplemental receiver.

¶12  On June 9, 2011, the day before the return date of the order to show cause, Collier initiated a state insolvency proceeding in Florida.  SB1 moved to enjoin the insolvency proceeding on the grounds that SB1 had a receiver's lien on Collier's personal property, which was perfected.  Decade intervened and objected to imposition of an injunction.  The Florida insolvency proceeding was enjoined and Collier was found in contempt of court for failing to appear at SB1's supplemental proceedings.

¶13  On July 29, 2011, SB1 moved for court approval of the sale of Collier's personal property located in Brookfield, Wisconsin, which had a fair market value of $63,925.  SB1 also moved to order Collier to turn over certain shares of stock, rights to unasserted counterclaims and affirmative defenses in Waukesha County cases, and all partnership interests in and profits from an entity called AWI Limited Partnership.

¶14 Decade intervened and opposed SB1's motions. Decade moved for summary judgment on the grounds that it had a superior lien on all of Collier's personal property. It argued that according to our decision in Mann v. Bankruptcy Estate of Badger Lines, Inc., 224 Wis. 2d 646, 590 N.W.2d 270 (1999), all that is necessary to perfect a common law lien that prevents SB1 from pursuing collection is service on Collier of an order to appear at a supplemental proceeding.

¶15 SB1 responded that Decade could not have had a lien on Collier's personal property when it served Collier with a notice to appear at supplemental proceedings because Decade's judgment had not been entered in the judgment and lien docket.

¶16 Decade contended that the failure to enter the judgment in the judgment and lien docket did not affect the validity of its lien.[5] At a hearing before the circuit court, Decade's attorney argued that "the key issue is that execution and the ability to execute [are] separate from the ability to institute supplementary proceedings because you don't need to have [an un]satisfied execution in order to proceed with a compelling order to appear before a court commissioner." In other words, Decade's position was that a judgment creditor can obtain a common law lien even if its judgment is not docketed or executable because the ability to execute and a judgment creditor's lien are not tethered.

---

[5] The parties seem to agree that the failure to enter Decade's judgment in the judgment and lien docket was due to a clerk's error.

7

¶17 The circuit court rejected Decade's argument, reasoning that "if the underpinning for the proceeding fails[,] the proceeding itself necessarily fails."  In denying Decade's motion for reconsideration, the court reiterated that its position was that "you can't pursue collection unless you have an executable judgment. . . . [H]ow can you go forward and compel somebody to appear at a supplementary where you don't have a judgment that you can collect on[?]"

¶18 Accordingly, the circuit court concluded that SB1's interest in Collier's personal property was superior to that of Decade's, holding that "[a]ll actions, proceedings, liens or other orders relative to Decade's un-docketed judgment prior to June 29, 2011 that would otherwise [a]ffect or limit SB1's supplemental proceedings or attempt to execute upon the judgment are held for naught."  The circuit court then granted SB1's motions and approved the sale of Collier's personal property.  The court also vested the supplemental receiver with Collier's rights in the property identified in SB1's motion for turnover.

¶19 Decade appealed and the court of appeals affirmed the orders of the circuit court.  The court of appeals concluded that service of an order to appear at supplemental proceedings "does not . . . present an alternative to a properly docketed judgment."  The court also concluded that the circuit court's refusal to exercise the court's equitable power in favor of Decade was within its discretion, noting that "the record suggests that Collier evaded service from SB1 for months and that Decade's six lawsuits were filed as a dilatory tactic."

¶20 Decade seeks review before us, making the same arguments it made to the circuit court and the court of appeals. We affirm the decision of the court of appeals to the extent that it recognized SB1's priority to the property SB1 levied. We also affirm its conclusion that an undocketed judgment cannot obtain an execution.  We modify the decision of the court of appeals insofar as it could be read to recognize a blanket lien giving any one unsecured judgment creditor the exclusive right to pursue collection from all of a debtor's personal property, simply due to service of an order to appear for supplemental proceedings.[6]

## II.  DISCUSSION

### A.  Standard of Review

¶21  Decade asks us to uphold what it asserts is a judgment creditor's lien on all of Collier's personal property.  Whether a lien exists and the effect of an alleged lien against third parties are questions of law that we review independently of the court of appeals.  See McIntyre v. Cox, 68 Wis. 2d 597, 602, 229

---

[6] In explaining its refusal to separate execution and supplemental proceedings, the court of appeals held that "[w]ithout a creditor's lien, there is no right to pursue collection under § 816.03."  Associated Bank, No. 2011AP2597, unpublished slip op., ¶16.  This statement may simply express the same uneasiness we have with allowing a creditor to circumvent statutory execution processes.  Lest our affirmation of the decision of the court of appeals be construed to recognize a blanket lien that gives an unsecured judgment creditor the exclusive right to pursue collection from all of the judgment debtor's personal property, we clarify that no such blanket lien exists or is necessary to pursue collection from a judgment debtor.

N.W.2d 613 (1975); Yorgan v. Durkin, 2006 WI 60, ¶55, 290 Wis. 2d 671, 715 N.W.2d 160 (Roggensack, J., dissenting).

¶22 Decade also asks us to review the circuit court's refusal to exercise its equitable powers, for which we employ an erroneous exercise of discretion standard. J.L. Phillips & Assocs. v. E & H Plastic Corp., 217 Wis. 2d 348, 365, 577 N.W.2d 13 (1998). An erroneous exercise of discretion occurs when the circuit court fails to exercise discretion, the facts fail to support the court's decision or the circuit court applies the wrong legal standard. Id. at 364-65.

### B. General Debtor/Creditor Principles

¶23 By entering a judgment in the judgment and lien docket, a judgment creditor obtains a ten-year statutory lien on real property of the debtor located in the county in which the judgment was docketed. Wis. Stat. § 806.15(1). However, entering a judgment in the judgment and lien docket does not create a statutory lien on the debtor's personal property. Instead, a judgment creditor obtains an unsecured, inchoate interest with regard to the debtor's personal property, tangible and intangible, against which to levy. As such, a judgment creditor will typically "have to take further steps to enforce the judgment." Robert A. Pasch, 12 Wisconsin Practice Series: Wisconsin Collection Law § 14:1, at 286 (2d ed. 2006). Execution, garnishment and turnover orders applying property in satisfaction of a judgment are all methods of levying the judgment debtor's personal property.

## 1.  Levy

¶24 Wisconsin statutes provide several different methods by which to levy, but each "require[s] reachable, non-exempt, assets of the debtor."  Pasch, supra, § 14:1, at 287.  One method used to judicially enforce money judgments is execution.  Black's Law Dictionary 650 (9th ed. 2009); see Wis. Stat. § 815.02 ("A judgment which requires the payment of money or the delivery of property may be enforced in those respects by execution.").  For instance, a judgment creditor can execute on specific, non-exempt personal property of the debtor by obtaining an order to have the sheriff seize the property.  Wis. Stat. § 815.05(6).

¶25 If a judgment creditor locates specific, non-exempt personal property belonging to the debtor or owed to the debtor in the control of a third party, the judgment creditor may be able to levy that property through garnishment.  Wis. Stat. § 812.01.  Garnishment is entirely statutory.[7]  Therefore, "[i]n the absence of specific statutory authorization, garnishment does not lie."  Moskowitz v. Mark, 41 Wis. 2d 87, 91, 163 N.W.2d 175 (1968).

---

[7] Garnishment actions vary in type and requirements.  For example, under certain circumstances, a garnishment action may be commenced prior to judgment.  See Wis. Stat. § 812.02; Wis. Stat. § 812.05.  In addition, the filing of a garnishment action does not assure that other creditors do not have a superior claim to the property the garnishee holds.  See Wis. Stat. § 812.11(5).

¶26 Finally, a creditor may levy specific, non-exempt personal property by obtaining a court order to apply that property in satisfaction of the judgment.  Wis. Stat. § 816.08. A supplemental receiver may obtain such a turnover order on a creditor's behalf.  Id.; Candee v. Egan, 84 Wis. 2d 348, 361, 267 N.W.2d 890 (1978) ("A receiver in aid of execution is authorized to collect those assets revealed by the examination of the debtor, take possession of them, apply them to the satisfaction of the judgment, and return the excess to the judgment debtor.").

¶27 Because each of these statutory collection procedures requires a creditor to identify specific, non-exempt property of the debtor to levy, judgment collection can be cumbersome and expensive if the details of a debtor's property are not known to the judgment creditor.  Supplemental proceedings provide a mechanism by which to obtain information in aid of judgment collection.

### 2.  Supplemental proceedings

¶28 Wisconsin  Stat.  ch.  816  is  entitled  "Remedies Supplementary to Execution."  Supplementary proceedings are a "form of discovery . . . used where the judgment creditor is uncertain of the nature, location, extent, and amount of the debtor's property."  Pasch, supra, § 16:1, at 318.  Wisconsin Stat. ch. 816 vests a supplemental court commissioner with certain powers to aid in enforcement of the judgment against the judgment debtor's property.  For instance, a supplemental court commissioner can compel a judgment debtor who has been served

12

with an order in compliance with Wis. Stat. § 816.035 to appear to answer questions concerning his or her property. Wis. Stat. § 816.03. If it appears that there is danger of a judgment debtor leaving the state or if the judgment debtor has property he or she unjustly refuses to apply to the judgment, the commissioner may require the debtor to give a bond and refrain from disposing of property not exempt from execution. Wis. Stat. § 816.07. If supplemental proceedings reveal non-exempt personal property, a court commissioner or judge may order that the property be applied toward the judgment, sometimes through the use of a supplemental receiver, rather than having a sheriff seize the property. Wis. Stat. § 816.04; Wis. Stat. § 816.08.

### 3. Liens

¶29 No statute grants a judgment creditor a lien on the judgment debtor's personal property simply by docketing the judgment. However, in Badger Lines, we mentioned a lien that had as one of its underpinnings a docketed money judgment. There, the United States Court of Appeals for the Seventh Circuit certified the following question that arose in a dispute in federal bankruptcy court: "Does Wisconsin law require that a lien obtained by a judgment creditor who institutes supplementary proceedings under Wis. Stat. § 816.04 be perfected, and if so, how is the lien to be perfected?" Badger Lines, 224 Wis. 2d at 649 n.2. When we decided Badger Lines, we assumed, as did the certified question, that the judgment creditor had a lien, and we answered that "a creditor's lien is valid and superior against other creditors at the time the

13

creditor serves the debtor with a summons to appear at the supplementary proceeding under Wis. Stat. § 816.03(1)(b)." Id. at 649. We now take a closer look at when a lien may arise and to which personal property such a lien may attach.

¶30 Kellogg v. Coller, 47 Wis. 649, 3 N.W. 433 (1879), involved two judgment creditors who sought to employ Wis. Stat. § 3030 and Wis. Stat. § 3031 (1878) when the executions of their individual judgments were returned unsatisfied. Id. at 657. To some extent, Kellogg's discussion is helpful to determining when a judgment creditor may obtain a lien. There, we explained:

> In several summary proceedings supplementary to executions against the same debtor, returned unsatisfied (R. S., secs. 3028-3038),—such a proceeding being a substitute for a creditor's bill,— the creditor who first commences his proceeding and obtains service of process upon the debtor, and prosecutes the proceeding with proper diligence to the appointment of a receiver, obtains a prior lien upon the assets of the debtor.

Id. at 649 (emphasis added). This passage appears to be the source of the common law receiver's lien discussed in Candee, which we cited in Badger Lines, and Badger Lines itself. Badger Lines, 224 Wis. 2d at 654.

¶31 However, Kellogg says nothing about a blanket judgment creditor's lien on all of the judgment debtor's personal property. In addition, it is somewhat problematic to argue too strongly from cases as old as Kellogg because the statutes they employ differ from current legislative enactments, and the ever developing body of case law and code can shade what at the moment of decision once seemed so clear.

14

¶32 Furthermore, there is a "diversity of opinion as to [the] real character" of judgment creditor's liens relating to execution that dates back much farther than Candee.  For instance, in Bank of Commerce v. Elliott, 109 Wis. 648, 660-61, 85 N.W. 417 (1901), we examined the rights of a judgment creditor who had initiated a garnishment action.  In attempting to ascertain the creditor's rights in relation to a bankruptcy trustee, we noted:

> The courts have uniformly said . . . that the service of a garnishee process is an equitable levy upon the property of the debtor in the hands of the garnishee, and that the interest thereby obtained in such property is at least in the nature of an equitable lien, and has been commonly called a lien. In many cases it has been called a lien without qualification, in others an equitable lien, and in some a mere inchoate or incipient lien,——the mere commencement of proceedings to obtain a lien in fact. . . . Some . . . authorities are to the effect that a garnishee levy creates a specific lien.  Others are directly to the contrary.

Id. at 660-61 (emphasis added).  As we have explained, garnishment creates a lien due to the seizure of the debtor's property that is in the hands of the garnishee defendant. Morawetz v. Sun Ins. Office, 96 Wis. 175, 178, 71 N.W. 109 (1897) ("[G]arnishment is a seizure in the hands of the garnishee by notice to him, creating an effectual lien upon the garnished property to satisfy whatever judgment").

¶33 The judgment creditors in both Kellogg and Bank of Commerce levied the debtor's property in order to affix common law liens——Kellogg by attempted execution that was returned

15

unsatisfied and then securing the appointment of a receiver, who applied the debtor's personal property to the judgment debt, and Bank of Commerce by prosecuting a garnishment action, wherein the specific personal property in the hands of a third party was levied. Kellogg, 47 Wis. at 656; Bank of Commerce, 109 Wis. at 661. The conclusion that a judgment creditor who first identifies and levies specific, non-exempt personal property of a judgment debtor has a superior interest in regard to other judgment creditors who have taken no such actions in regard to the identified property is consistent with our earlier decisions.[8]

¶34 For example, in Alexander v. Wald, 231 Wis. 550, 286 N.W. 6 (1939), we examined the rights of a supplemental receiver vis-a-vie a bankruptcy trustee. Id. at 551. We held that the receiver, who had discovered and executed on intangible personal property consisting of a real estate mortgage, a chattel mortgage, and certain personal property that the debtor had fraudulently conveyed, had an interest superior to that of the bankruptcy trustee with respect to that property because the receiver had been appointed and levied more than four months before commencement of the bankruptcy. Id.

---

[8] It should be noted that when two judgment creditors with docketed money judgments each attempt to levy identified, non-exempt personal property, or when a perfected secured party's rights are at issue, further analysis may be necessary to determine relative priorities.

¶35 In Holton v. Burton, 78 Wis. 321, 47 N.W. 624 (1890),[9] we reached a consistent result. Holton concerned a judgment creditor who had initiated supplemental proceedings, but had not levied any specific property. An assignment for the benefit of creditors was made after supplemental proceedings were begun, but before a supplemental receiver was appointed. Id. at 322. We reasoned that the judgment creditor did not have a superior interest, but instead had to take a pro rata share of the debtor's personal property in the insolvency proceeding because the judgment creditor had not timely levied specific personal property to avoid the effect of the insolvency proceedings. Id. at 327-28.

¶36 It is reasonable to conclude that the results in Alexander and Holton, where judgment creditors were in disputes with insolvency trustees, were at least partially due to the different steps the judgment creditors took and the timing of those steps. When the judgment creditor exercised rights to the debtor's property by timely levying specific property well in advance of the insolvency proceedings, the creditor prevailed. When the creditor did nothing more than initiate supplemental proceedings prior to an insolvency proceeding, the creditor did not prevail. Stated otherwise, a judgment creditor obtained a superior interest in identified personal property of a judgment debtor that could defeat the claim of a trustee in insolvency or

---

[9] While the reasoning in Holton v. Burton, 78 Wis. 321, 47 N.W. 624 (1890), is interesting, I note that the statutes then employed have been changed significantly.

17

bankruptcy proceedings when the judgment creditor or a receiver acting on the judgment creditor's behalf levied that property before the trustee obtained an interest in the property.[10]

¶37 At first glance, Kellogg may appear to cast doubt on this interpretation. In Kellogg, two judgment creditors, who had executions returned unsatisfied, initiated supplemental proceedings and obtained appointments of two supplemental receivers.[11] The first judgment creditor to initiate supplemental proceedings was second to properly serve the debtor with an order to appear for supplemental proceedings because of a technical problem with its first service. Kellogg, 47 Wis. at 651-52. By the time the first judgment creditor properly served the debtor, the second judgment creditor had served the debtor and the debtor had assigned his property to the second judgment creditor's receiver in aid of execution of the second creditor's

_____

[10] Early New York cases are particularly persuasive because Wisconsin adopted its supplemental proceeding statutes from New York. Robert S. Moss, Supplementary Proceedings in Wisconsin, 23 Marq. L. Rev. 49, 51 (1939). These cases also support our interpretation. While the New York and Wisconsin supplemental proceeding statutes were still comparable, the New York rule was "to give the creditor a lien on the debtor's equitable assets which was [an] 'inchoate' [lien] at the time the examination order was served." See Isadore H. Cohen, Collection of Money Judgments in New York: Supplementary Proceedings, 35 Colum. L. Rev. 1007, 1015-17 (1935) (citing Edmonstone v. McLoud, 16 N.Y. 543 (N.Y. 1858); Lynch v. Johnson, 48 N.Y. 27 (N.Y. 1871)).

[11] We ultimately held that "where different judgment creditors are prosecuting supplementary proceedings against the same debtor at the same time," only one receiver should be appointed. Kellogg v. Coller, 47 Wis. 649, 657, 3 N.W. 433 (1879).

18

judgment.  Id.  Despite the assignment, we concluded that "under all of the circumstances of the case, [the second creditor's] proceeding [wa]s inoperative to give [the second creditor] a prior lien."  Id. at 657.

¶38 Read in light of its facts, Kellogg established the judgment creditor for whose benefit a supplemental receiver must act, i.e., which judgment creditor had priority to money that the supplemental receiver recovered, regardless of which creditor had the receiver appointed.  Under Kellogg, the first judgment creditor who made a "bona fide attempt to serve" an order to appear for supplemental proceedings and also prosecuted "with proper diligence" to the appointment of a supplemental receiver had priority to assets the supplemental receiver recovered, even if the receiver was appointed in the supplemental proceedings of a different judgment creditor.  Id. at 656-57.[12]  The equities of the underlying facts also may have impacted our decision in Kellogg because the second judgment creditor and her attorney "had actual notice that [Kellogg] had previously commenced [supplemental proceedings]" when she instituted her proceeding.  Id. at 652.

¶39 However, it is significant that two judgment creditors remained free to pursue collection on their docketed judgments

---

[12] See also Alexander v. Wald, 231 Wis. 550, 552, 286 N.W. 6 (1939) ("bankruptcy proceedings had not displaced the lien acquired by the receiver upon his appointment"); Cohen, supra note 10, at 1016 (in New York, it was only upon appointment of a receiver that a creditor's interest "ripen[ed] into a full lien").

at the same time. Id. at 658 ("different [supplemental] proceedings may be pending at the same time, the only restriction upon a junior proceeding being that creditors prosecuting prior proceedings shall be notified of the pendency thereof, and that but one receiver shall be appointed. . . . the plaintiff in the junior proceeding should be allowed to proceed . . . without regard to priorities").

¶40 Furthermore, our conclusion that a superior judgment creditor's interest in specific personal property may arise when that property is seized has been the statutory directive of the legislature since at least 1864. As we explained so long ago in Knox v. Webster, 18 Wis. 426 (*406) (1864), when interpreting a prior statute, "'[p]ersonal property shall be bound from the time of its seizure on execution.' Before seizure there is no lien[;] . . . [t]he lien takes effect from the date of the levy and by virtue thereof." Id. at 429-30 (*409) (internal citation omitted). In this regard, the current statute states the same legal principle: "Personal property shall be bound from the time it is seized." Wis. Stat. § 815.19(1). Accordingly, seizure, often referred to as levying, of personal property is necessary to create a lien in favor of an unsecured judgment creditor.

¶41 Having explained the common law foundation and the statutory foundation for when a judgment creditor's lien may

arise in identified personal property,[13] we briefly return to Badger Lines. Badger Lines arose in a priority contest between a judgment creditor, Emerald Industrial Leasing Corporation, and a trustee in bankruptcy. Badger Lines, 224 Wis. 2d at 649-50. A trustee in bankruptcy has, by federal statute, all the rights of a judgment creditor. 11 U.S.C. § 544(a). A supplemental receiver had been appointed to administer Badger Lines' property for the benefit of Emerald before the case made its way to us. Prior to the appointment of the receiver, Emerald also had docketed its judgment. Badger Lines, 224 Wis. 2d at 649-50. And subsequent to said docketing, Emerald served an order directing Badger to appear for a ch. 816 supplemental proceeding. Id. at 650.

¶42 Docketing a creditor's judgment is a condition precedent to establishing the priority of a judgment creditor's interest because a judgment must be docketed before an execution against the property of a judgment debtor can issue. Wis. Stat. § 815.05(1g)(a)6. (requiring that an execution shall state, "[t]he time of entry in the judgment and lien docket in the county to which the execution is issued"). Furthermore, a judgment creditor must levy specifically identified personal

---

[13] See In re Badger Lines, Inc., 140 F.3d 691, 694-95 (7th Cir. 1998) (finding that Kellogg's omission of a perfection requirement is "too thin a reed on which to rest [an] important [priority] determination, especially in light of the significant changes which have occurred in debtor/creditor law in the 120 years since" that decision).

property of the debtor before a lien can arise in that property. Knox, 18 Wis. 2d at 429-30; Wis. Stat. § 815.19(1).

¶43 In Badger Lines, the trustee in bankruptcy attempted to declare Emerald's interest a preference, whereby he could place Emerald's money judgment among all of the other unsecured creditors' claims. Badger Lines, 224 Wis. 2d at 650-51. Of course, Emerald had no interest in sharing the assets it had uncovered with other creditors. However, if Emerald's lien was created within 90 days of filing the bankruptcy, it would be held to be an avoidable preference and Emerald would lose to the trustee. Id. at 651. Therefore, instead of focusing on the creation of its lien, Emerald shifted the court's focus to "perfection" of its lien. Emerald did so because if perfection occurred more than 90 days before the filing of the bankruptcy, Emerald could possibly prevail.

¶44 In Badger Lines, we did not have a full record that displayed all the issues that we might have considered; therefore, it differed significantly from the case now before us.[14] Badger Lines' statement that the date of service on Badger

---

[14] At least one commentator seemed to view the Badger Lines as a departure from older case law, noting that:

> The Wisconsin Supreme Court, In re Badger Lines, Inc., 224 Wis. 2d 646, 590 N.W.2d 270 (1999), held that service upon the debtor of an order to appear at a supplemental examination under Chapter 816 establishes at the time of service a lien in favor of the creditor without requiring the creditor to take additional steps to perfect the lien . . . The court rejected arguments that, to avoid a secret lien, some additional action should be required of a judgment creditor. The court also rejected arguments that the

Lines of the order to appear for supplemental proceedings was the date of "perfection" must be limited to the context in which it arose. That context did not include an assertion that common law liens do not require "perfection," but rather, liens arise in specifically identified, non-exempt personal property when that property is levied.

¶45 Accordingly, it must be recognized that service of an order to appear for supplemental proceedings will not create an interest that is superior to the interest of a docketed judgment creditor who has levied specific personal property of the debtor. Merely serving an order to appear for supplemental proceedings also will not create a common law lien on the debtor's personal property nor will it give a judgment creditor an interest superior to that of a secured creditor who has

---

lien should not arise until a supplemental receiver is appointed or the court issues a turnover order as to the debtor's assets; the court held that the lien arises at an earlier stage, when the judgment debtor is served with the order to appear at the supplemental examination. See Holton v. Burton, 78 Wis. 321, 47 N.W. 624 (1890).

Robert A. Pasch, 12 Wisconsin Practice Series: Wisconsin Collection Law § 16:13, at 330-31 (2d ed. 2006). Pasch also noted the breadth of the decision, explaining that the case "references the lien as a 'receiver's lien,' [but] . . . appears to have broader application to the lien of a judgment creditor pursuing supplemental proceedings." Id. at 331.

timely proceeded according to the directives of Wis. Stat. ch. 409.[15]

### 4. Statutory collection procedures

¶46 To conclude, as Decade asserts, that simply serving a judgment debtor with an order to appear at supplemental proceedings gives a judgment creditor the exclusive right to pursue collection from all of the debtor's personal property would improperly "impinge on the purview of the legislature" by eviscerating its statutory scheme for judgment collection. See Crown Castle USA, Inc. v. Orion Constr. Group, LLC, 2012 WI 29, ¶17, 339 Wis. 2d 252, 811 N.W.2d 332 (refusing to find an implied right to compel a third party to appear at supplemental proceedings because Wis. Stat. ch. 816 did not provide for one).

¶47 For example, if a judgment creditor were able to encumber all of a judgment debtor's personal property simply by

---

[15] Wisconsin Stat. ch. 409 governs voluntarily given security interests, rather than creditors' rights represented by a judgment. Wis. Stat. § 409.109(4)(i) (chapter does not apply to "assignment of a right represented by a judgment, other than a judgment taken on a right to payment that was collateral"). Under this system of secured transactions, a creditor obtains a security interest in property the debtor has assigned as collateral that is enforceable against the debtor when "attachment" occurs pursuant to Wis. Stat. § 409.203. The creditor's security interest is valid against the claims of other creditors when it perfects that interest by meeting "all of the applicable requirements for perfection in ss. 409.310 to 409.316." Wis. Stat. § 409.308. These "applicable requirements" vary depending on the type of collateral, but the general rule is that "a financing statement must be filed to perfect all security interests." § 409.310(1). See Attorney's Title Guaranty Fund, Inc. v. Town Bank, 2014 WI 63, __ Wis. 2d __, __ N.W.2d __.

serving an order to appear for supplemental proceedings, alternate statutory processes such as execution, ch. 815, and garnishment, ch. 812, and turnover orders would be nearly useless for collection of money judgments. A judgment creditor who does nothing more than initiate supplemental proceedings could stop another judgment creditor who has located specific, non-exempt personal property from having the sheriff seize the asset under a valid execution order. Similarly, a judgment creditor who discovered a judgment debtor's bank account could be prevented from garnishing that account once an order to appear for supplemental proceedings was served. And since state law determines priority in bankruptcy, a judgment creditor who does nothing more than serve a debtor with an order to appear at supplemental proceedings outside of the bankruptcy preference period could thereby defeat the claim of a bankruptcy trustee (and the unsecured creditors he or she represents) to all of the debtor's personal property. If those results were to occur, they would directly contradict the legislature's directive that "[p]ersonal property shall be bound from the time it is seized." Wis. Stat. § 815.19(1).

¶48 Moreover, by granting the judgment creditor with a docketed judgment who first levies on non-exempt personal property a superior interest in that property, "[t]he law justly rewards the diligent creditor who by his timely efforts succeeds in discovering assets of the debtor which are inequitably withheld from his creditors." John W. Smith, The Equitable Remedies of Creditors § 235, at 243 (Chicago, Callaghan & Co.

25

1899). Rather than encouraging diligence, the kind of blanket lien Decade asks us to recognize would remove incentives for a judgment creditor to locate and levy a debtor's personal property. The facts of this case aptly demonstrate some of the problems this would present.

### 5. Article 9 secured transactions

¶49 A blanket lien on a judgment debtor's personal property also would frustrate the legislature's goal of a uniform system of secured transactions. The Wisconsin Legislature adopted the Uniform Commercial Code in 1965 in order to "simplify, clarify, and modernize the law governing commercial transactions." Wis. Stat. § 401.103(1)(a).

¶50 Chapter 409 governs secured transactions and works toward these stated goals by prescribing the steps a party must take to obtain and perfect a security interest in personal property.[16] Wis. Stat. § 409.203; Wis. Stat. § 409.301 et. seq.; see generally Smith & Spidahl Enters., Inc. v. Lee, 206 Wis. 2d 663, 673, 557 N.W.2d 865 (Ct. App. 1996) ("Fashioning equitable solutions to mitigate the hardship of [statutory] requirements on particular creditors undermines [the system's] purpose. . . . [R]elaxing [statutory] requirements does not . . . justify the

---

[16] Article 9 of the Uniform Commercial Code is contained in Wis. Stat. ch. 409. Nat'l Operating, L.P. v. Mut. Life Ins. Co. of N.Y., 2001 WI 87, ¶31, 244 Wis. 2d 839, 630 N.W.2d 116 ("Wisconsin has adopted each section of the U.C.C. relevant to this case. This includes all of Article 9, which is embodied in Chapter 409 of the Wisconsin Statutes. Chapter 409 does not vary in any material respect from the uniform law.").

uncertainty and inconsistency that would result from such an approach.").

¶51 Article 9 does not apply to the present case. Wis. Stat. § 409.109(4)(i). Judgment creditors are unsecured creditors with regard to a debtor's personal property. Still, the impact of a blanket lien on the statutory scheme for secured transactions provides additional understanding of the conflicts that such a lien would create. We explain in more detail the implications a blanket lien would have on lending, paying particular attention to Wis. Stat. ch. 409 in Attorney's Title Guaranty Fund v. Town Bank, 2014 WI 63, ¶¶30-36, __ Wis. 2d __, __ N.W.2d __, released today.

¶52 And finally, we conclude that if a judgment creditor were to have a blanket lien on all the personal property of a judgment debtor that precludes other creditors from pursuing collection, that is a policy choice better left to the legislature than to the courts. Compare Cal. Civ. Proc. Code § 708.110(d) (providing for a lien on non-exempt personal property for one year from service of notice to appear at supplemental proceedings); 735 ILCS 5/2-1402(m) (judgment

"becomes a lien" on non-exempt personal property when citation from the clerk is served).[17]

## C. Application

¶53 Decade contends that because it served an order to appear for supplemental proceedings, it has a blanket lien on all of Collier's non-exempt personal property. However, Decade does not explain how it acquired this lien. Instead, it skips that step in the analysis and discusses perfection of its lien.

¶54 SB1 asserts that "neither Decade nor Keierleber had any interest in actually recovering money from Collier." This view is supported by "the record[, which] suggests that Collier

_____

[17] Wisconsin is not the first state to face problems regarding the idea of a common law lien arising out of supplemental proceedings. Illinois courts were split on whether the issuance of a "citation to discover assets," a procedure akin to supplemental examination, created a lien, until the legislature expressly provided for the creation of a lien. Prior v. Farm Bureau Oil Co., 176 B.R. 485, 492 (Bankr. S.D. Ill. 1995); see Francis Edward Stepnowski, Less Than Perfected: Uncertainty in Illinois Judgment Lien Law, 13 N. Ill. U. L. Rev. 33, 41 (1992) (before the legislature provided for the lien, Illinois case law created uncertainty, "whereas today's business climate requires bright-line rules to determine priority among creditors"). The New York legislature similarly provided for a lien upon "secur[ing of] an order for delivery of, payment of, or appointment of a receiver of, a debt owed to the judgment debtor or an interest of the judgment debtor in personal property" in order "to avoid the confusion of . . . former law." N.Y. C.P.L.R. § 5202 (Consol. 2013) and Advisory Committee Notes subd. (b); see Cohen, supra note 10, at 1015-17. Finally, the California legislature has provided for a lien on personal property that is compatible with Article 9. See Cal. Civ. Proc. Code § 697.510(a) (providing judgment creditors with the equivalent of a security interest in a debtor's personal property when the creditor files notice of a judgment in the state's central filing system).

28

evaded service from SB1 for months and that Decade's six lawsuits were filed as a dilatory tactic." Associated Bank, No. 2011AP2597, unpublished slip op., at ¶18. Should we adopt Decade's position, we would be affirming Decade's ability to shelter Collier's assets from SB1 and other creditors. SB1 asserts that if Decade's contention were correct, by serving Collier with an order to appear, Decade could prevent other creditors from executing on Collier's personal property while Decade itself took no steps to apply Collier's property in satisfaction of Decade's judgment. Therefore, as long as Decade continued to take no action to collect, Collier would remain in possession of his personal property, flouting the "noble proposition that debtors ought to pay." David Gray Carlson, Critique of Money Judgment (Part Two: Liens on New York Personal Property), 83 St. John's L. Rev. 43, 44 (2009).

¶55 SB1's argument has a lot of merit. SB1 has not only docketed its money judgment and served Collier with an order to appear for supplemental proceedings, SB1 also obtained a turnover order through a receiver for Collier's identified personal property thereby levying that property. Accordingly, SB1 has a lien on that levied property that is superior to other unsecured judgment creditors.

¶56 In addition, we conclude that Decade does not have the exclusive right to pursue collection from Collier's personal property simply by serving him with a notice to appear at supplemental proceedings because Decade had not docketed its

judgment and proceeded in its collection efforts sufficient to acquire a lien on any of Collier's personal property.

¶57 Before concluding, we briefly address Decade's contention that the circuit court erroneously exercised its discretion when it refused to give Decade priority over SB1 in regard to Collier's personal property. Decade contends that the circuit court should have employed its equitable powers and held its judgment was docketed because the failure in docketing was due to the error of the clerk. Again, we disagree.

¶58 First, if Decade suffered any damages due to the clerk's error, the legislature has provided a statutory remedy for that error in Wis. Stat. § 806.10(3). Second, the circuit court balanced Decade's lawsuits and supplemental proceeding with Collier's apparent evasion of service of SB1's order to appear and concluded that Decade's failure to docket should not be accorded an equitable remedy. Third, we agree with the court of appeals that serving an order to appear for supplemental proceedings is not the equivalent of docketing a money judgment. "In a race-notice jurisdiction such as Wisconsin, prompt docketing of judgments is needed to establish the proper priority of claims." S. Milwaukee Sav. Bank v. Barrett, 2000 WI 48, ¶40, 234 Wis. 2d 733, 611 N.W.2d 448. Fourth, a properly docketed judgment is required to obtain a statutory lien on real property. Wis. Stat. § 806.15; Builder's Lumber Co. v. Stuart, 6 Wis. 2d 356, 364, 94 N.W.2d 630 (1959). No less should be required for personal property. Accordingly, we conclude that

the circuit court did not erroneously exercise its discretion when it refused to grant Decade equitable relief.

### III. CONCLUSION

¶59 We conclude that supplemental proceedings under ch. 816 are a discovery tool in aid of judgment collection. Decade's serving Collier with an order to appear for supplemental proceedings did not give rise to a blanket lien on all of Collier's personal property that prevented SB1 from pursuing collection. A judgment creditor obtains an interest in a judgment debtor's identified, non-exempt personal property superior to other unsecured creditors when it dockets its money judgment, identifies specific personal property and levies that property. Levying may be accomplished by at least three different means: (1) by executing against specific personal property with the assistance of a sheriff; (2) by serving the garnishee defendant in a garnishment action to seize specific property in the hands of the garnishee defendant; or (3) by obtaining an order to apply specific personal property to the satisfaction of the judgment, which a creditor may do with the assistance of a supplemental receiver. Wis. Stat. § 815.05(6); Wis. Stat. § 812.01; Wis. Stat. § 816.08.

¶60 Here, SB1 was the first judgment creditor with a docketed money judgment to levy specific, non-exempt personal property of Collier. It did so by obtaining a court order to turn over specifically identified property to its receiver. Accordingly, we affirm the decision of the court of appeals that concluded that SB1 has priority over Decade in regard to the

31

specific personal property SB1 identified and levied.  However, insofar as the decision of the court of appeals can be read to recognize a blanket lien in favor of SB1 that prevents other creditors from pursuing collection from Collier's personal property, we modify that decision because no blanket lien exists.

*By the Court.*—The decision of the court of appeals is modified and as modified, affirmed.

¶61  DAVID T. PROSSER, J., did not participate.

¶62 SHIRLEY S. ABRAHAMSON, C.J. *(dissenting)*. The majority opinion reaches its erroneous conclusion today by operating in its own imaginary world, divorced from reality.

¶63 In the real world, our courts have recognized for the last 150 years a judgment creditor's common-law equitable lien, superior to other creditors, created by service of notice of a supplementary proceeding upon a judgment debtor on the debtor's non-exempt personal property. In the real world, creditors and debtors have relied upon this judgment creditor's common-law equitable lien. In the real world, the parties in the instant case dispute the applicability of this common-law equitable lien to the undisputed facts.

¶64 In the world of the majority opinion, a judgment creditor's common-law equitable lien and the issues raised by the parties simply have not existed and will not exist in the future.[1]

---

[1] According to the majority opinion, a lien on a judgment debtor's non-exempt personal property turns on the judgment creditor's "levying" on non-exempt personal property after identifying the property and docketing the judgment. Majority op., ¶3.

Docketing the judgment is mentioned in only one place in chapter 815, entitled "Execution": Section 815.05(1g)(a)6. provides that the execution "shall intelligibly refer to the judgment stating," inter alia, "the time of entry in the judgment and lien docket in the county to which the execution is issued."

With regard to execution, Wis. Stat. § 806.06(4) provides that "[n]o execution shall issue until the judgment is <u>perfected</u> or until the expiration of the time for <u>perfection</u>." (emphasis added). A judgment is <u>perfected</u> "by the taxation of costs and the insertion of the amount thereof in the judgment." Wis. Stat. § 806.06(1)(c). <u>Perfection</u> does not relate to docketing.

1

¶65 The issue in this case as presented by the parties is whether Decade Property obtained a common-law equitable lien on Jack Collier's personal property superior to SB1's interest when Decade Property, the judgment creditor, served Collier, the judgment debtor, with an order to appear at a supplemental examination but the clerk of circuit court failed to docket the judgment.[2]

¶66 SB1 asserts a superior common-law equitable lien on Jack Collier's non-exempt personal property even though SB1 served Collier notice of the supplementary proceeding after Decade Property served Collier, but SB1's judgment was docketed before Decade Property's judgment was docketed. The circuit court and court of appeals agreed with SB1.

¶67 Rather than address the issue of how a judgment creditor obtains a common-law equitable lien, the majority opinion broadly and surprisingly holds that supplemental

_____

Furthermore, Wis. Stat. § 815.04(1)(a) permits execution to issue "within 5 years of the rendition of the judgment. Section 806.06(1)(a) provides that "[a] judgment is rendered by the court when it is signed by the judge or by the clerk at the judge's written direction" (emphasis added).

The circuit court and court of appeals do not always use the words "perfecting" a judgment, "entering" a judgment, and "docketing" a judgment as these words are used in the statutes.

[2] The Petition for Review states the issue as follows: "Is a creditor's right to obtain a common law Creditor's/Receiver's Lien against a judgment debtor's personal property conditioned upon docketing the judgment in the Judgment and Lien Docket under Wis. Stat. § 806.10(1)?"

The circuit court concluded, and the court of appeals affirmed, that docketing the judgment was a prerequisite for a common-law creditor's lien. See majority op., ¶19.

2

proceedings do not give rise to any lien whatsoever on any of the debtor's personal property. "[S]upplemental proceedings under ch. 816 are a discovery tool in aid of judgment collection." Majority op., ¶3. "Supplementary proceedings provide a mechanism by which to obtain information in aid of judgment collection." Majority op., ¶27.

¶68 According to the majority opinion, a judgment creditor obtains an interest in a judgment debtor's identified non-exempt personal property superior to other unsecured creditors when the judgment creditor (1) dockets its money judgment, (2) identifies specific, non-exempt personal property, and (3) "levies" (by at least one of three enumerated means) the specific non-exempt personal property it has identified. Majority op. ¶¶3, 23, 33.

¶69 The long-recognized judgment creditor's equitable common-law lien arising from supplementary proceedings simply does not exist in the world created by the majority opinion. Yet in the real world, creditors and debtors have long relied on the court's recognition of the common-law equitable lien.[3] In writing the common-law creditor's lien out of Wisconsin legal history, the majority opinion mischaracterizes or ignores existing case law.

¶70 To put the majority opinion's rewriting of history and case law in proper perspective, I first review the law regarding the judgment creditor's common-law equitable lien arising on a

---

[3] See Attorney's Title Guaranty Fund v. Town Bank, 2014 WI 63, ___ Wis. 2d ___, ___N.W.2d ___ (a judgment creditor acted under the assumption that a common-law equitable lien existed on the judgment debtor's property).

3

debtor's personal non-exempt property in supplementary proceedings.  I then discuss our most recent case, In re Badger Lines, Inc., 224 Wis. 2d 646, 590 N.W.2d 270 (1999), a case that the majority opinion in effect overrules without confronting the doctrine of stare decisis.

¶71  Before I tackle these two issues, I enumerate a few other flaws in the majority opinion (not necessarily in order of significance), but I do not address each in great detail.

¶72  First, the majority opinion is confused and confusing as it describes its holding in different ways in different parts of the opinion.  Compare majority op., ¶¶3, 20, 33, 42, 45, 47, 48, 52, 60.

¶73  Second, the majority opinion entangles the law on liens on real property and personal property.  See majority op., ¶58;  Associated Bank N.A. v. Collier, No.  2011AP2597, unpublished slip op., ¶14 (Wis. Ct. App. Nov. 28, 2012).

¶74  Third, "levying" is the important concept in the majority opinion, yet it is undefined.  According to the majority opinion, a lien on a judgment debtor's non-exempt personal property turns on the judgment creditor's "levying" on the non-exempt personal property.  Majority op., ¶3.

¶75 Yet service of notice of a supplementary proceeding has been characterized by the court as an "equitable levy." Supplementary proceeding on the debtor "operates as an equitable levy, and creates a lien in equity upon the effects of the judgment debtor, and every species of property belonging to [the debtor] may be reached and applied to the satisfaction of his

4

debts." Bragg v. Gaynor, 85 Wis. 468, 486, 55 N.W. 919 (1893) (emphasis added).[4] See also In re Milburn, 59 Wis. 24, 34, 17 N.W. 965 (1883) (service of the notice of the supplementary proceeding "operates as an equitable levy and creates a lien in equity . . . ").

¶76 Without discussion or explanation, the majority opinion ignores case law describing service of notice of a supplementary proceeding as an "equitable levy."

¶77 Fourth, the majority opinion appears to conflict with various statutes. Contrary to the majority opinion, a judgment creditor need not always docket the judgment to obtain a lien and priority on non-exempt personal property of the debtor.[5]

¶78 For example, a judgment creditor may, without docketing the judgment, obtain a lien on a debtor's property by use of garnishment. On service of the garnishment complaint, the garnishment lien has priority. Wis. Stat. § 812.18.[6] A garnishee is liable as to debts due "or to become due" at the time of service of the garnishment summons and complaint.[7]

---

[4] See also Candee v. Egan, 84 Wis. 2d 348, 360, 267 N.W.2d 890 (1978) (service of notice of the supplementary proceeding serves as an equitable levy on the unknown property of the debtor "to preserve the debtor's nonexempt property for the benefit of the specific judgment creditors . . . .").

[5] Liens may be perfected in many different ways. The manner in which a lien is perfected depends on both the type of lien asserted, e.g., a judgment lien, a statutory lien, an equitable lien, and the type of property against which the lien is asserted, e.g., real or personal.

[6] See also Robert A. Pasch, 12 Wisconsin Practice Series: Wisconsin Collection Law § 17:15, at 349 (2d ed. 2006).

[7] Wis. Stat. § 812.18.

¶79 The court has spoken of garnishment as an _equitable levy_ upon the property of the debtor in the hands of the garnishee, just as it has spoken of service of notice of a supplementary proceeding as operating as an _equitable levy_. _Bragg_, 85 Wis. at 486.

¶80 Fifth, the majority opinion voices concern about "blanket liens" over a debtor's non-exempt personal property.[8] I agree that issues exist regarding the scope of a judgment creditor's common-law equitable lien on a debtor's non-exempt personal property, including a lien on after-acquired property. By eliminating the lien entirely, the majority opinion does not tackle the more nuanced issues involving the scope of the common-law equitable lien created by notice of supplementary proceedings, an issue raised by the parties in the instant case.

¶81 Sixth, by subverting the longstanding rule on a judgment creditor's common-law equitable lien, the majority opinion ignores the policy of this court to promote predictability, efficiency, and uniformity in commercial transactions. The majority opinion does not consider whether it should "sunburst" its opinion to maintain the predictability and efficiency of the law governing economic transactions.[9]

---

[8] _See_ majority op., ¶¶3, 20, 51, 52-55.

[9] The decision to apply a new rule of law only prospectively, or to "sunburst" the new rule of law, is driven by our attempt to alleviate the unsettling effects of a party justifiably relying on a contrary view of the law. [_State ex rel. Buswell v. Tomah Area Sch. Dist._, 2007 WI 71, ¶ 46, 301 Wis. 2d 178, 732 N.W.2d 804]. Accordingly, in determining whether to apply a new rule of law prospectively instead of retrospectively, we consider three factors: (1)

6

¶82 Accordingly, I dissent.

I

¶83 I begin by discussing the case law on a judgment creditor's common-law equitable lien in supplementary proceedings.

¶84 Since the early days of statehood, our statutes and case law have recognized that when a judgment creditor properly serves notice upon a debtor of a supplementary proceeding to identify property to satisfy its judgment, the judgment creditor obtains a common-law equitable lien on the debtor's property.[10]

¶85 The judgment creditor's common-law equitable lien has a long robust history in our state. It can be traced to the

---

whether our holding establishes a new rule of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression, the resolution of which was not clearly foreshadowed; (2) whether retroactive application would further or impede the operation of the new rule; and (3) whether retroactive application could produce substantial inequitable results. Id., ¶47; see also [Kurtz v. City of Waukesha, 91 Wis. 2d 103, 109, 280 N.W.2d 757 (1979)].

Heritage Farms, Inc. v. Markel Ins. Co., 2012 WI 26, ¶45, 339 Wis. 2d 125, 810 N.W.2d 465 (footnote omitted).

[10] See, e.g., Kellogg v. Coller, 47 Wis. 649, 656 (1879); In re Milburn, 49 Wis. 24, 17 N.W. 965 (1883); Bragg v. Gaynor, 85 Wis. 468, 486, 55 N.W. 919 (1893); In re Badger Lines, Inc., 224 Wis. 2d 646, 654 (citing Candee, 84 Wis. 2d at 360).

Wisconsin creditors and debtors, including both parties in the instant case, point to the judgment creditor's common-law equitable lien on a debtor's property created by a subpoena or notice to appear at a supplementary hearing. See Brief of Intervening Defendant-Appellant at 31-39; Brief of the Co-Plaintiff-Respondent at 16.

creditor's bill in equity. In 1856 the Wisconsin legislature adopted the precursor to chapter 816 of the Wisconsin Statute governing supplementary proceedings[11] "with the intent to substitute supplementary proceedings for the relief formerly obtainable in equity by a creditor's bill."[12] The supplementary proceedings are the "statutory equivalent of a creditor's bill in equity at common law and follow essentially the same rules of law."[13]

¶86 The court has routinely used the common-law principles of the creditor's bill in equity to interpret the supplementary proceedings statutes. A supplementary proceeding, the court declared, "is a substitute for a creditor's bill in equity, and is governed by the same rules of law in respect to the rights and priorities of parties affected by the proceeding which control the equitable action. . . . [T]he creditor who, after filing his bill, obtained the first service of the subpoena upon the judgment debtor, thereby obtained a prior lien upon the equitable assets of such debtor."[14]

---

[11] Ch. 120, §§ 200-213, Laws of 1856.

[12] Robert S. Moss, Supplementary Proceedings in Wisconsin, 23 Marq. L. Rev. 49, 49 (1939). Moss urged clarification of the principles and practices governing supplementary proceedings. 23 Marq. L. Rev. at 58.

[13] In re Badger Lines, Inc., 224 Wis. 2d 646, 654, 590 N.W.2d 270 (1999).

If a lien existed at common law, the mere existence of other lien statutes does not abrogate the common-law lien. Moynihan Associates, Inc. v. Hanisch, 56 Wis. 2d 185, 190, 201 N.W.2d 534 (1972).

[14] Kellogg v. Coller, 47 Wis. 649, 655-56 (1879).

¶87 The creditor's bill in equity existed as a remedy at equity for creditors when no remedy at law existed.[15] The creditor's bill in equity arose to address the problem of judgment creditors of debtors who had died. At common law, the debtor's property at death no longer belonged to the debtor for purposes of execution; the property instead belonged to the debtor's heirs and assigns.[16] The creditor's bill in equity allowed the creditor to reach the assets of the deceased debtor by providing a separate action for the creditor against the estate, heirs, or assigns of the deceased debtor.

¶88 Additionally, the creditor's bill in equity provided an equitable remedy if a judgment debtor concealed assets from the debtor and the sheriff was forced to return with an execution unsatisfied, leaving the creditor with no remedy at law to satisfy his or her judgment.[17]

---

[15] Robert S. Moss, Supplementary Proceedings in Wisconsin, 23 Marq. L. Rev. 49, 50 (1939).

For an extensive discussion of the creditor's bill in equity, see C.C. Langdell, A Brief Survey of Equity Jurisdiction, Part VI, 4 Harv. L. Rev. 99 (1890).

[16] At common law, when the debtor died, the creditor was unable to execute on the debtor's property. Langdell, supra note 15, at 119.

[17] As in the creditor's bill, an appeal was made to the conscience of the defendant to discover upon oath whether he had property covered up or concealed beyond the reach of an execution, so in this proceeding, the judgment debtor is required to state, under oath, whether he has not property somewhere concealed, which should be applied in payment of his debts.

In re Remington, 7 Wis. 541, 548 (1858).

¶89 The common-law lien functioned as an "equitable levy" precisely because the property could not be levied on at law.[18] The majority opinion gets it backwards when it rules that service of notice of a supplementary proceeding cannot constitute a lien and that a judgment creditor must levy on the property in order to establish a lien and priority.[19] Rather, the purpose of the supplementary proceeding was to allow a judgment creditor to obtain a superior lien, without meeting the statutory requirements of execution or other levy at law.

¶90 Our longstanding case law teaches that a judgment creditor's service of notice upon the debtor of the supplementary proceeding creates a judgment creditor's lien against the non-exempt personal property of the debtor. "[T]he filing of the bill and a bona fide attempt to serve the subpoena give the complainant priority of right to the equitable assets of the judgment debtor . . . ."[20]

¶91 The rule that a lien superior to other creditors is created from the time of the judgment creditor's service of

---

[18] Langdell, supra note 15, at 109-118).

[19] Majority op., ¶3.

[20] Kellogg v. Coller, 47 Wis. 649, 655, 3 N.W. 433 (1879).

10

notice of the supplementary proceeding upon the debtor has been continuously reiterated and reinforced by this court.[21]

¶92  In In re Milburn, 59 Wis. 24, 34, 17 N.W. 965 (1883), the court stated that the service of the notice of the supplementary proceeding "operates as an equitable levy, and creates a lien in equity upon the effects of the judgment debtor":

> As in a creditor's bill, so in supplementary proceedings: the commencement of them by the service of process or notice operates as an equitable levy, and creates a lien in equity upon the effects of the judgment debtor, and every piece of property belonging to him may be reached and applied to the satisfaction of his debts.

¶93  The Milburn holding is echoed in later cases. In Bragg, 85 Wis. at 486, the court cited Milburn and reiterated that service of process or notice of the supplementary proceeding serves as an equitable levy on all a judgment debtor's property and creates a lien in equity on the judgment debtor's property:

> When commenced by service of process or notice, [the supplementary proceeding] operates as an equitable levy, and creates a lien in equity upon the effects of the judgment debtor, and every species of property belonging to him may be reached and applied to the satisfaction of his debts.

---

[21] The majority opinion at ¶40 relies on Knox v. Webster, 18 Wis. 426 (1864), for the rule that "[p]ersonal property shall be bound from the time of its seizure on execution." This declarative statement is true, but it does not mean that seizure is always necessary to create a lien. The Knox case dealt with two creditors who attempted to seize the same property. The court held that executions should be levied according to the order in which the sheriff received the executions.

11

¶94 Kellogg v. Coller, 47 Wis. 649, 3 N.W. 433 (1879), is also instructive. The majority opinion cites Kellogg approvingly but views the case as establishing the rule that a lien's perfection requires "the appointment of a receiver, who then applied the debtor's specified personal property to the judgment debt." Majority op., ¶33.[22]

¶95 The majority opinion's commentary on Kellogg is contrary to the facts and reasoning of Kellogg.

¶96 In Kellogg, two judgment creditors attempted to satisfy their judgments against a debtor. The first creditor, Kellogg, obtained an order of a supplementary proceeding and served the order upon the debtor. Due to a scrivener's error, the affidavit of the sheriff was defective and service of notice of the supplementary proceeding was not completed. Thus, Kellogg did not appoint a receiver, secure a turnover order, or identify specific property of the debtor.

¶97 The second creditor, Coller, instituted supplementary proceedings against the debtor and served the debtor with notice of the proceeding. The debtor appeared and disclosed a life insurance policy. Subsequently, the court commissioner appointed a receiver for the assets of the debtor identified at the hearing. The debtor then assigned all his non-exempt personal property to the receiver.

---

[22] The summary set forth in the majority opinion at ¶33 does not appear in the text of Kellogg v. Coller, 47 Wis. 649, 656, 3 N.W. 433 (1879).

12

¶98 The first creditor had a receiver appointed after the second creditor's receiver took possession of the property of the debtor.

¶99 The first creditor completed none of the majority opinion's requirements for obtaining priority on the debtor's property: no statutory levy, no execution, no receiver, no specification or identification of property before the second creditor acted. The second creditor in Kellogg completed all of the majority opinion's requirements for obtaining priority on the debtor's property prior to the first creditor: she had identified specific property; a receiver had been appointed and turnover required; and the debtor's property was properly executed against.

¶100 If the majority opinion's interpretation of Kellogg were correct, that a creditor cannot obtain a lien on the debtor's personal property by mere service of notice of a supplementary proceeding, the first creditor should have lost.

¶101 Yet in Kellogg, the first creditor won. The Kellogg court explicitly rejected the reasoning the majority opinion adopts in the present case. The Kellogg court stated:

> As in a creditor's suit the filing of the bill and a bona fide attempt to serve the subpoena give [the first creditor] priority of right to the equitable assets of the judgment debtor, so, under the circumstances of this case, the bona fide attempt to serve the order issued by the commissioner at the instance of [the first creditor] must be held to confer upon them like priority of right over [the second creditor], although the order obtained by her was served before service of [the first creditor's] order was perfected.

Kellogg, 47 Wis. at 656 (emphasis added).

13

¶102 In other words, the Kellogg court gave priority over the debtor's personal property to the first creditor, based on the first creditor's bona fide attempt to serve the debtor in the supplementary proceeding. It determined that the second creditor's "proceeding is inoperative to give her a prior lien on the equitable assets of the judgment debtor." Kellogg, 47 Wis. at 657.

¶103 The longstanding rule that the perfection of the creditor's lien depends on "first service of the subpoena upon the judgment debtor" was applied in Kellogg to "give the complainant priority of right to the equitable assets of the judgment debtor." Kellogg, 47 Wis. at 656.

¶104 Kellogg stands in direct contradiction of the majority opinion's assertion that "service of an order to appear for supplemental proceedings will not create an interest that is superior to the interest of a docketed judgment creditor who has levied specific personal property of the debtor." Majority op., ¶48. Under Kellogg, service of notice of supplementary proceedings creates a superior interest in a judgment debtor's property.

¶105 The court has interpreted Kellogg as I do. In Candee v. Egan, 84 Wis. 2d 348, 360, 267 N.W.2d 890 (1978), the court, citing Kellogg, reiterated that "[a] judgment creditor who first begins supplementary proceedings against a particular judgment debtor obtains an equitable lien upon the debtor's nonexempt

14

property that is prior to the equitable lien of a judgment creditor who commences a supplementary proceeding thereafter."[23]

¶106 The same rule of law was confirmed in In re Badger Lines, Inc., 224 Wis. 2d 646, 590 N.W.2d 270 (1999). The court stated that it is service of notice of the supplementary proceeding upon the debtor by which a judgment creditor perfects a common-law equitable lien on the non-exempt personal property of the debtor. Badger Lines, 224 Wis. 2d at 658.

¶107 I now examine Badger Lines.

II

¶108 The majority opinion contorts and distorts Badger Lines to reach its result, changing the baseline rule that Badger Lines reiterated and upon which debtors and creditors have relied.

¶109 The question in Badger Lines was presented to this court by the federal Seventh Circuit Court of Appeals as a question of state law necessary to resolve a federal bankruptcy case.[24] The following is a rough timeline of the events in Badger Lines:

---

[23] Citing Candee, 84 Wis. 2d at 360, and Alexander v. Wald, 231 Wis. 550, 286 N.W. 6 (1939), Robert Pasch writes: "[A] judgment creditor who first begins a supplementary proceeding against a debtor obtains an equitable lien on the debtor's non-exempt property that is senior to any judgment creditor who subsequently commences a supplementary proceeding." Pasch, supra note 6, § 16:13, at 329. See also Pasch, supra note 6, § 17:15, at 349.

[24] See Matter of Badger Lines, Inc., 140 F.3d 691 (7th Cir. 1998) (certifying a question of Wisconsin state law for resolution by the Wisconsin Supreme Court).

15

- October 18, 1991: A judgment of $82,120.26 was entered in favor of Emerald Industrial Leasing Corporation against Badger Lines, Inc. for services rendered and unpaid.

- October 21, 1991: Emerald Industrial's judgment was docketed.

- October 30, 1991: Emerald Industrial served Badger Lines with an order directing it to appear at a supplementary hearing pursuant to Wis. Stat. § 816.03 and enjoining Badger Lines from transferring its assets.

- December 17, 1991: The court commissioner appointed a supplementary receiver on behalf of Emerald Industrial; issued a "turnover" order that instructed Badger Lines to turn over its assets; and enjoined Badger Lines from transferring its assets.

- February 11, 1992: Badger Lines filed for Chapter 7 bankruptcy in the Bankruptcy Court for the Eastern District of Wisconsin.

- March 1992: The receiver filed a proof of claim in bankruptcy asserting a receiver's lien on behalf of the Emerald Industrial.

- April 1995: The Chapter 7 trustee issued a final report distributing the remaining assets of Badger Lines; the receiver and Emerald Industrial were treated as unsecured creditors.

16

¶110 The federal bankruptcy and district courts had determined that Emerald Industrial had a common-law equitable lien on the debtor's property.[25] Thus, the federal court asked: "Does Wisconsin law require that a lien obtained by a judgment creditor who institutes supplementary proceedings under Wis. Stat. § 816.04 be perfected, and if so, how is the lien to be perfected?"[26]

¶111 The key dispute in the case was whether any additional action besides notice to the debtor was required to perfect Emerald Industrial's common-law equitable lien on Badger Lines' assets. Emerald Industrial argued that perfection of its lien on Badger Lines' assets occurred upon service of notice to Badger Lines of the supplementary proceeding. The bankruptcy trustee argued, however, that perfection of the lien was accomplished either by the appointment of a receiver or the issuance of a turnover order.[27]

¶112 If Emerald Industrial were correct and service of notice of the supplementary proceeding provided perfection of the lien, then it would have priority over other creditors. If the bankruptcy trustee were correct and Emerald Industrial

---

[25] See In re Badger Lines, Inc., 199 B.R. 934, 937-38 (Bankr. E.D. Wis. 1996) (recognizing the existence of the lien created by supplementary proceedings); In re Badger Lines, Inc., 1996 WL 33364962 (E.D. Wis. Mar. 14, 1996) (treating the common-law lien as already in existence and ruling only on the question of perfection of the lien).

[26] Matter of Badger Lines, Inc., 140 F.3d 691, 699 (7th Cir. 1998).

[27] In re Badger Lines, 224 Wis. 2d 646, 652, 590 N.W.2d 270 (1999).

17

needed to take steps in addition to service of notice, then Emerald Industrial's lien would have been perfected within the 90-day preference period in bankruptcy and could be avoided.

¶113 When Badger Lines was served with notice of the supplementary proceeding, the judgment creditor did not know what property Badger Lines held. The "specific personal property" of Badger Lines was not identified until December 17, 1991, when the turnover order was issued.

¶114 Nevertheless, the Badger Lines court held that Emerald Industrial obtained and perfected an equitable lien on October 30, 1991, the date of its service of notice of the supplementary proceedings.

¶115 The Badger Lines court explicitly rejected the bankruptcy trustee's argument that appointment of a receiver or a turnover order were necessary to perfect a judgment creditor's common-law equitable lien on the defendant's property:

> [R]equiring an additional step beyond service in order to obtain a superior lien removes any incentive for negotiation and settlement between the creditor and the debtor. . . . . Such imposed protraction benefits no one, wastes the parties' time and money, and burdens the courts with potentially unnecessary hearings and proceedings.

Badger Lines, 224 Wis. 2d at 660.[28]

¶116 Badger Lines concluded that nothing in addition to service of notice to the debtor of a supplementary hearing was required to perfect Emerald Industrial's common-law equitable lien over Badger Lines' personal property: "Wisconsin law does

---

[28] Id. at 660.

18

not require a creditor to take additional steps to perfect a receiver's lien beyond service on the debtor."[29]

¶117 Although the majority opinion frequently cites to Attorney Pasch's treatise on collection law in Wisconsin,[30] the majority opinion conveniently fails to reveal that Attorney Pasch disagrees with the majority opinion's characterization of Badger Lines. Pasch explains Badger Lines as I do:

> The Wisconsin Supreme Court, In re Badger Lines, Inc., 224 Wis.2d 646, 590 N.W.2d 270 (1999), held that service upon the debtor of an order to appear at a supplemental examination under Chapter 816 establishes at the time of service a lien in favor of the creditor without requiring the creditor to take additional steps to perfect the lien. The court determined that a creditor who initiates a supplemental proceeding in Chapter 816 must not do anything more than serve the debtor with notice to appear at the supplemental examination so as to obtain a superior lien that cannot be overcome by another creditor. The court rejected arguments that, to avoid a secret lien, some additional action should be required of a judgment creditor. The court also rejected arguments that the lien should not arise until a supplemental receiver is appointed or the court issues a turnover order as to the debtor's assets; the court held that the lien arises at an earlier stage, when the judgment debtor is served with the order to appear at the supplemental examination. See Holton v. Burton, 78 Wis. 321, 47 N.W. 624 (1890). Although the Badger Lines case references the lien as a "receiver's lien," the decision appears to have broader application to the lien of a judgment creditor pursuing supplemental proceedings.

Pasch, supra note 6, § 16:13 at 330-31 (emphasis added).

---

[29] Id. at 661 (emphasis added).

[30] See, e.g., majority op., ¶¶24, 28.

19

¶118 Unlike Pasch, the majority opinion resurrects and adopts the losing party's argument in Badger Lines, while professing to follow the holding of Badger Lines.[31]

¶119 Thus, the majority opinion blithely overturns Badger Lines and 150 years of Wisconsin jurisprudence, leaving creditors and debtors unsure of their rights. I cannot join such an undertaking.

¶120 For the foregoing reasons, I dissent.

¶121 I am authorized to state that Justice ANN WALSH BRADLEY joins this dissent.

---

[31] The majority opinion asserts that in Badger Lines, the court held that "liens arise in specifically identified, non-exempt personal property when that property is levied." Majority op., ¶44. This is flatly wrong. In Badger Lines, the creditor Emerald Industrial had no knowledge of Badger's assets at the time it served notice upon Badger of the supplementary proceeding, but it nonetheless perfected its lien. Additionally, the Badger Lines court specifically refused to comment on the issue of levy (to the extent that "levy" means possession of the property). Badger Lines, 224 Wis. 2d at 658 n.5.